(99 App. Div. 391)

PERNETTI v. PEOPLE.

(Supreme Court, Appellate Division, First Department. December 23, 1904.)

1. BAIL — CONDITIONS OF BOND — APPEARANCE OF PRISONER — DIFFERENT OFFENSE.

A surety on a bail bond reciting that the prisoner was held on a charge of homicide, and conditioned, in the language of Code Cr. Proc. § 568, that the prisoner should appear and answer the charge mentioned, in whatever court it might be prosecuted, and should at all times render himself amenable to the orders and process of the court, was responsible for the appearance of the prisoner to answer an indictment for perjury found against him on the same day that the homicide charge was dismissed, and growing out of his false swearing on the inquest.

Laughlin and McLaughlin, JJ., dissenting.

Appeal from Special Term, New York County.

Maria G. Pernetti became surety on the bail bond of Messina Genova, who absconded, and appeals from an order refusing to set aside a judgment of forfeiture. Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Louis Jersawitz, for appellant.
Robert C. Taylor, for respondent.

O'BRIEN, J. This is an appeal from an order of the Special Term denying a motion to vacate and set aside a judgment upon a forfeited recognizance. The judgment was entered against Maria G. Pernetti, the present appellant, and it appears that an execution was issued upon such judgment, and the order appealed from also denied a motion to vacate such execution. The substantial facts are the following: One Benedetto Madonia was killed on April 14, 1903. Messina Genova was, with others, arrested for this crime, and he, with them, was admitted to bail. The appellant, Pernetti, gave bail for him in the sum of $1,500. Subsequently the charge against Genova was dismissed by the grand jury, but on the same day an indictment for perjury was found against him; it being

charged that he had sworn falsely before the coroner upon the inquest into the death of Madonia. Genova did not appear to plead to the indictment, and after various adjournments the bail bond was forfeited. Judgment was entered against this appellant, and an execution against her property was issued. The appellant contends that her motion to vacate the judgment and execution should have been granted, because her liability to respond under the bail piece was limited only to responsibility for Genova's appearing to answer an indictment for homicide; and the question is one of construction of the bail bond.

The form and substance of the undertaking are fixed by section 568 of the Code of Criminal Procedure. Here the bond was in the form prescribed by that section, and, after reciting that the prisoner, Genova, was held upon the charge of homicide, it provided in terms as follows:

"That the above-named Messina Genova shall appear and answer the charge above mentioned in whatever court it may be prosecuted, and shall at all times render himself amenable to the orders and process of the court."

In legal effect, the surety signing such a bond is substituted for the jailer, and it is his duty, when ordered and directed by the court, to produce the prisoner; and it would be giving a narrow construction to the obligation imposed by the bond to hold that the recital of the charge upon which the prisoner is held is conclusive upon the question of the responsibility of the surety for the production of the prisoner.

If the prisoner, instead of obtaining a surety, remained in jail, then, though originally arrested upon one charge, he would be where, under the order of the court, he could be produced to answer for any other charge. By reason, however, of the undertaking given, the prisoner is removed from the custody of the keeper of the jail under an agreement that the surety will forfeit the penalty of the bond if unable to produce the prisoner at all times when required by "the orders and process of the court." It is common knowledge that the precise nature of a criminal charge is not at all times definitely determined or fixed, nor can it be until those intrusted with the administration of criminal law can examine into the character of the evidence. It is frequently necessary to make an arrest promptly, and, if magistrates are compelled at the outset to determine with exactitude the precise criminal charge which the evidence will sustain, not only would there be a great burden placed upon the magistrates, but frequently, and in a case of which the present is a good illustration, there might be a miscarriage of justice.

The statement in the bond of what is regarded as the offense is, at most, but a recital; and there is no doubt that, if the prisoner had remained in jail, he would be ready to answer to the charge of perjury which grew out of the proceedings before the coroner in which the person or persons responsible for the homicide were involved. So far as the remedy of the people against the prisoner is concerned, if he had remained in jail, it would be immaterial on what charge he was held, because he would be amenable to the

orders and process of the court upon any other charge. As the result of the giving of the bond, the surety has obtained the release of the prisoner, and has become the substitute for the jailer; and I can see no escape from the obligation upon his part to produce the prisoner, just as the jailer would have produced him when required by the orders and process of the court.

Upon authority, this view is sustained, as will be seen from the cases of Champlain v. People, 2 N. Y. 82; People v. Gillman, 125 N. Y. 372, 26 N. E. 469; and People v. Russell, 35 Misc. 765, 72 N. Y. Supp. 1, affirmed by this court 67 App. Div. 620, 74 N. Y. Supp. 1141. In the Champlain Case the question arose upon a demurrer to the complaint, the objection thereto being that there was no averment that an indictment had been found at the term at which the defendant failed to appear. In overruling the demurrer, the Court of Appeals said:

"A man's bail are the jailers of his own choosing, and they are bound to have him as much in the power of the court as if he was within the prison walls."

This statement is quoted with approval in the Gillman Case, supra, and it was therein further said:

"The statement of the offense charged, therefore, is not of the essence of the undertaking of bail, nor does it bear materially upon the obligation. It is rather a matter for recital, and it bears upon the completeness of the instrument in form and historical detail. The undertaking binds the surety for the appearance of the prisoner not merely to answer to that specific charge upon which he was admitted to bail, but also that he 'shall at all times render himself amenable to the order and process of the court, and, if convicted, shall appear for judgment, and render himself in execution thereof.' While he is in custody, whether of the sheriff or surety, he is held to appear as well upon any other charge of crime for which he may be subsequently indicted. The undertaking is in effect that the defendant in the proceedings shall be kept in custody and subject to the order of the court until discharged. When that occurs, and not till then, is the surety released."

This is not a mere dictum. It is a statement of the law, and is part of the reasoning of the court which induced it to hold that the defendant in that case was liable upon a bail bond.

In the Russell Case, supra, this court affirmed, without opinion, the order of the Special Term in which the views expressed in the Champlain and Gillman Cases were reasserted by the learned judge who wrote the opinion at Special Term; and I do not see why that decision is not controlling upon this court.

In People v. Pernetti, 95 App. Div. 510, 88 N. Y. Supp. 714, which was an appeal by Pernetti from a judgment in favor of the plaintiff forfeiting a recognizance, with notice of an intention to bring up for review upon such appeal the order directing the forfeiture of the undertaking, it was held that no appeal will lie from such a judgment; the remedy being by motion to vacate the order forfeiting the recognizance. In the course of the opinion the learned judge did say that:

"So far as appears by this record, the order forfeiting the recognizance was not justified, as it does not appear that the principal was ever called upon to answer the charge of homicide, and the liability of his surety was conditioned upon his failure to appear and answer that charge. But for the reason stated, this question cannot be considered upon this appeal."

It will thus be noticed that the question was not involved in that case, and was not decided, and this expression was clearly obiter.

The weight and importance to be attached to expressions in opinions has recently been discussed in Crane v. Bennett, 177 N. Y. 106, 69 N. E. 274, and as therein said:

"A judicial opinion, like evidence, is only binding so far as it is relevant, and when it wanders from the point at issue it no longer has force as an official utterance."

The question upon which, as stated, the learned judge writing the opinion expressed his views in People v. Pernetti, supra, was not involved, nor was it decided; and therefore that case should not be regarded as controlling, or as intended to reverse the conclusions reached by this court in the Russell Case, supra, and also by the Court of Appeals in the Champlain and Gillman Cases, supra.

I think, therefore, that the order of the Special Term was right, and that it should be affirmed, with costs.

VAN BRUNT, P. J., and PATTERSON, J., concur.

LAUGHLIN, J. (dissenting). The papers and points all appear to be improperly entitled. We do not understand that the appellant has brought an action against the people, and we assume that this motion was made in an ex parte action entitled "The People" against her.

On the 9th day of May, 1903, the coroner of the county of New York, after holding an inquest upon the death of one Benedetto Madonia, held Messina Genova, who had been arrested for complicity in the murder of the decedent, to bail, in the sum of $1,500, to answer the charge of homicide. Genova gave a recognizance, with the appellant as surety, reciting the charge upon which the principal was held, and the principal and surety therein jointly and severally undertook—

"That the above-named Messina Genova shall appear and answer the charge above mentioned in whatever court it may be prosecuted, and shall at all times render himself amenable to the orders and process of the court; and if convicted shall appear for judgment and render himself in execution thereof; or if he fail to perform either of these conditions that we will pay to the people of the state of New York $1,500."

Attached to the recognizance was the usual agreement required in the county of New York, by which the principal and surety agreed and consented that, if the undertaking should be forfeited, judgment might be entered against them, upon filing a copy of the order of forfeiture and the recognizance, for the amount specified, upon which execution might issue forthwith.

The charge upon which Genova was held was investigated by a grand jury of the Court of General Sessions, and dismissed without indictment on the 25th day of June, 1903; but Genova was never formally discharged by the court, nor was the liability of the appellant ever formally canceled. On the same day the grand jury, after investigating a charge of perjury against Genova for testimony given before the coroner, returned an indictment against him for

the crime of perjury. The appellant was thereupon notified to produce Genova in the Court of General Sessions on the 26th day of June to plead to the indictment for perjury. Genova failed to appear, and his arraignment upon the indictment was postponed until the 29th day of June, at which time he also failed to appear, and thereupon the court directed the forfeiture of the recognizance; and a formal order of forfeiture was entered, showing that it was ordered on account of the failure of the appellant to produce her principal to answer to the indictment for perjury, and upon this order and the recognizance the judgment was entered.

We are of opinion that the judgment should have been vacated. Our attention has been called to several decisions of the courts of this state declaring the rule that, where a person against whom a criminal charge is made is held to bail, the recognizance may be forfeited if the principal fails to appear and answer to any indictment that may be found against him upon the same or any other charge. In none of these cases, however, was that doctrine essential to the decision, and in none were the facts similar or analogous to those now before us. These dicta are entitled to great weight as expressing the views of some eminent jurists; but we have often been reminded that they are not regarded as controlling upon the courts wherein they were expressed, or binding upon us. We realize that this would be a convenient rule for the people, but is it a just rule for the accused or his surety? A man may be held to answer for a misdemeanor, and his friends may become satisfied that he is not guilty, and therefore be willing to become surety for his appearance to answer the charge. I think it is not generally understood that in such circumstances, if the principal be exonerated upon the charge upon which he is held, but in the meantime another charge, perhaps of a more serious nature, is preferred against him, upon facts previously or subsequently arising, which he deems it inadvisable to face, the surety can be held. If the surety be thus liable, it cannot be upon the theory that his principal failed to answer the charge upon which he was held, or failed to obey any order or direction of the court given concerning the same, but merely because he did not produce the principal, to the end that, upon being discharged upon exoneration by the grand jury from the charge upon which he was held, he might be rearrested upon another indictment or charge. But even this formality was not followed, to accomplish the injustice done in this particular case. If the liability of a surety is thus extensive, when it becomes generally known it will in many instances be difficult for persons accused of trivial offenses to obtain their release on bail; and, until it becomes so known and understood, it will be a serious hardship upon sureties. It is a somewhat novel and startling doctrine that a surety upon a bond reciting that he will be responsible for the accused's appearance and answering an indictment, and for his complying with the directions of the court concerning a particular specified crime upon which he is held, becomes a guarantor of his past and future conduct as well.

The learned counsel for the people is undoubtedly correct in his contention that the failure of the first grand jury to find an indictment does not ipso facto discharge the liability on the recognizance. The charge might again be presented to another grand jury, and, if an indictment should be found, and the principal should fail to appear to plead thereto, undoubtedly the recognizance could be properly forfeited. Doubtless, technically speaking, the liability upon the recognizance is not terminated until the accused is formally discharged by a proclamation in open court, in the usual form, for a jail delivery. It is not necessary to decide whether the court may require the appearance of one admitted to bail to await the action of the grand jury for the sole purpose of having the usual proclamation made, and discharging him if cause be not shown for his further detention after the grand jury failed to indict, and may forfeit the recognizance on his failure to appear, because this recognizance has not been forfeited upon any such theory. We are of opinion that the provision of the recognizance upon which the people base their claim of a right to forfeit it for the surety's failure to produce the principal to answer another and different charge is not susceptible of that construction. The clauses, "and shall at all times render himself amenable to the orders and process of the court, and if convicted shall appear for judgment and render himself in execution thereof," are to be construed together, and with reference to the charge recited. The first of these clauses has reference to orders and process of the court concerning the charge upon which the principal is held—as, for example, an order increasing the amount of bail or requiring new sureties. This construction is emphasized by the following clause relating to the conviction. Surely it cannot be contended that that clause relates to a conviction upon another and different charge. It is a legal principle firmly established in our jurisprudence that a person accused of crime is presumed to be innocent until he is proven guilty beyond a reasonable doubt. That presumption is sufficiently overcome for the purpose of restraining him of his liberty when a sufficient information has been presented to a magistrate, or an indictment has been filed. The rule contended for by the people is diametrically opposed to this principle, for it seems to involve a presumption not only that a man is guilty of the charge upon which he has been arrested, but that he is probably guilty of other crimes which may be discovered, or that he will commit other crimes before he is formally discharged from the charge upon which he is held by bail. If this be not so, how are the people prejudiced by the release of an accused person upon bail? If they are prejudiced, it must be upon the theory that if, before his exoneration upon the charge upon which he is held, they discover that he has committed another crime, they are entitled to have him produced, to the end that they may arrest him for the other crime. This theory should not be adopted. It is opposed to all our principles of liberty, and the right to be admitted to reasonable bail, in a reasonable amount, to be determined, not by a consideration of all the crimes that might be committed, but solely by a consideration of the particular crime

with which he is then properly charged. We do not question the soundness of those decisions holding that the surety may be held where the indictment is based upon the facts out of which the arrest arose, even though the crime be insufficiently or erroneously specified in the recognizance. Here the facts upon which the arrest was made related to the homicide, and the indictment is based upon subsequent occurrences.

I think, therefore, that the order should be reversed and the judgment vacated.

McLAUGHLIN, J., concurs.