## STATE v. SCHENCK.

(Filed February 28, 1905.)

*Bail Bond—Sureties—Rights of—Liability of.*

1. Under section 1230 of The Code, a surety on a bail bond can, at any time before execution awarded against him, surrender to the court or to the sheriff, his principal, in discharge of himself.

2. The condition of a bail bond is not performed by the appearance, conviction and sentence of the defendant. The conviction does not, by virtue of its own force, put the defendant in the custody of the court or of the sheriff, but to exonerate the surety, the defendant must submit to such punishment as shall be adjudged.

3. A bail bond, conditioned for the defendant's appearance at the next term of court to answer the State on a criminal charge, and "not to depart the same without leave first had and obtained," binds the sureties for the continued appearance of their principal from day to day during the term and at all stages of the proceeding until he is finally discharged by the court either for the term or without day, and he must answer its calls at all times and submit to its judgment.

This was a motion by T. C. Howard and another, sureties, on the bail bond of defendant to set aside a judgment absolute, entered at April Term, 1904, against them, heard by *Judge W. B. Council,* at the November Term, 1904, of the Superior Court of CRAVEN County.

The defendant, Schenck, was tried before a Justice of the Peace for unlawfully selling liquor, a misdemeanor by statute. He was required to give bail for his appearance at the next term of the court held in October, 1903, and the appellants, Williams and Howard, became sureties on his bond, which was conditioned for Schenck's appearance at the said term of court "to answer the State on a charge of selling liquor on Sunday, and selling liquor without license, and not to depart the same without leave first had and obtained."

Schenck appeared, was tried and convicted. The court adjudged that he pay a fine of $100 and the costs. He thereupon excepted and appealed and was required to give an undertaking in the sum of $35 for the costs of appeal, an undertaking in the sum of $150 to stay the execution of the judgment, and one in the sum of $100 for his appearance at the next term of the court. He failed to give any of these undertakings or to pay the fine and costs and, having been called and failed, a judgment *nisi* was entered against him and his sureties for $100, the penalty of his bond. A *scire facias* issued on this judgment and was duly served and at April Term, 1904, the judgment was made absolute. The appellants moved to set aside the judgment, the motion was overruled and they appealed.

*Robert D. Gilmer, Attorney-General,* for the State.
*R. A. Nunn* for the sureties.

WALKER, J., after stating the case: The ground upon which appellants seek to vacate the judgment is that when Schenck appeared and was convicted and sentenced, the condition of the bond was fully performed and the appellants, his sureties, were exonerated, as, by reason of the conviction, they lost control of him and, thereafter, he was in the custody of the law. We cannot think this is the true construction of the bond and it is certainly contrary to the uniform practice of the courts in this State in such cases. At common law, when bail was given, and the principal relieved from the custody of the law, he was regarded, not as freed entirely, but as transferred to the friendly custody of his bail. They had a dominion over him, and it was their right, at any time, to arrest and deliver him again to the custody of the law, in discharge of their obligation. They were sometimes said to be his jailers and to have him always upon the string, which they may pull when they please, in order to surrender

him in their own discharge. *Cain v. State,* 55 Ala., 170; 1 Chitty's Cr. Law, 104. If they would fully discharge their obligation as his bail, they should as effectually secure their principal's appearance and put him as much under the power of the court, as if he were in the custody of the proper officer, and they do not answer the end of the law unless this is done. The principle thus stated is of ancient origin and has been recognized as controlling in determining the liability of bail. 1 Bacon Abr., "Bail," L. *State v. Stout,* 6 Halstead, 124. The extent of their duty and obligation therefore is to see to it, that the principal, at all times during the term of the court to which he is bound to appear, is present to answer the call of the court and to do what the law may require of him. If they fail in this respect, they have not kept him under the power of the court as if he had been in the custody of its proper officer. It must not be inferred that the surety is thereby required to do something not stipulated in his bond, for the obligation thus imposed is nothing more than what the law reasonably considers to be within the condition of his undertaking. It is said by the highest authority that a recognizance (or bail bond) in general binds to three things: (1) to appear and answer either to a specified charge or to such matters as may be objected; (2) to stand and abide the judgment of the court; and (3) not to depart without leave of the court, and that each of these particulars are distinct and independent. This was said too with reference to a bail bond worded precisely like the one in this case. It was contended by counsel in that case, which we will presently cite, that the stipulation not to depart the court without leave was an unusual one and of no binding force whatever, and in answering this contention the court said "that a stipulation of this kind was valid and obligatory at common law is not to be doubted. It was so declared more than thirty years ago by this court after full consideration." *State v. Hancock,* 54 N. J. Law, 393. That was a well con-

sidered case and seems to be a conclusive authority against the appellant upon the main question presented in the record. See also *State v. Stout, supra.* The doctrine has been thus stated and illustrated: "A recognizance binds the principal not only to appear but to abide the judgment of the court and not depart thence without its leave, and if the principal be ordered to execute a new bond, either to keep the peace for a specified period or for his appearance at a subsequent term or before another court, and he depart without complying with the order, it is a breach of the recognizance." 3 Am. & Eng. Enc. of Law (2nd Ed.) 715; *State v. Thompson,* 62 Ind., 367. This construction of a recognizance or bail bond is sustained by analogy in *State v. Smith,* 66 N. C., 620. In that case the defendant gave a bond with a surety for his appearance at the next term of the court. His case was continued and he was ordered to give bond for his appearance at a subsequent term, which he failed to do, but departed without leave of the court. He was called, and having failed to answer, his forfeiture was duly entered. In answer to the *scire facias* issued, the surety insisted that the defendant could not be called and a forfeiture entered after the continuance of the case. This court held that under the recognizance he could not depart without leave of the court, though not so expressly stated therein, and that he was required to answer at any time during the term when called, "it being the universal practice near the close of the court to look over the docket and call such defendants as have departed without leave of the court." And this, we now say, is a most reasonable practice. *State v. Morgan,* 136 N. C., 593. It works no harm to the sureties, nor does it increase the risk they assume nor in any way add to their obligation. It is fairly within the scope of their undertaking, as they have expressly agreed that their principal shall not depart without leave, and it appears to us that there is no valid reason for holding otherwise. The sureties can surrender their

principal to the court or to any lawful officer appointed to receive him, and this can be done, it is said in the statute, at any time before execution against them. Code, sec. 1230; *State v. Lingerfelt,* 109 N. C., 775. The conviction does not, by virtue of its own force, put the defendant in the custody of the court or of the sheriff. This is done, in our practice at least, by an order from the court, given of its own motion or on application of the solicitor, and the court, when it passes judgment upon a defendant and he appeals, can direct that he be not taken into custody immediately, but be permitted to find security for the costs of his appeal and for his appearance at the next term, and if he fails afterwards to appear, when called during the term, and perfect his appeal and give the necessary security for his appearance, or in default thereof to surrender himself in execution of the judgment, he may be called and his forfeiture entered. *Judge Story* says for the court in *Ex Parte Milburn,* 9 Pet., 704: "A recognizance of bail in a criminal case is taken to secure the attendance of the party accused to answer the indictment, and to submit to a trial and the judgment of the court thereon. It is not designed as a satisfaction for the offense, when it is forfeited and paid, but as a means of compelling the party to submit to the trial and punishment, which the law ordains for his offense." In *People v. Stager,* 10 Wend., 431, we find an instructive discussion of the matter by *Savage, C. J.,* the substance of which, being briefly stated, is that a person bound by a recognizance is not at liberty to depart after once making his appearance in court, but he must remain until discharged and not quit the court, without leave, at any stage of the trial, the object being not only to cause the accused to appear and answer the charge, but to submit to such punishment, if any, as shall be adjudged.

But there is another sufficient reason why the appellants should be held bound by the recognizance or bail bond and to be now liable for the penalty thereof. All the proceedings

of the court are *in fieri* until the expiration of the term, and during the term, the record remains completely under the control of the court. It may strike out its judgment and enter a different one. In other words, the court has the whole term during which to consider its action and modify or reverse it. The principle is supported by abundant authority. *Penny v. Smith,* 61 N. C., 36; *Halyburton v. Carson,* 80 N. C., 16; *Turrentine v. Railroad,* 92 N. C., 642. This being so, why could not the court strike out the verdict and judgment and award a new trial, and then continue the cause to the next term, in which case the sureties would remain liable (*State v. Smith, supra*), and if it could do this, why did it not also have the power to direct that the defendant should not be taken into custody until it could come to a final determination in the matter, or, as in this case, suspend execution of the judgment for a proper reason. The conviction and sentence were not final and irrevocable until the end of the term, which was after the default of the defendant and the entry of the forfeiture. If the court could set aside the judgment it could *a fortiori* postpone its enforcement.

We conclude that the recognizance binds the sureties for the continued appearance of their principal, from day to day, during the term and at all stages of the proceeding, until he is finally discharged by the court, either for the term or without day. He must answer its calls at all times and submit to its judgment. In no other way can the criminal law of the State be well administered.

No Error.