(73 Misc. Rep. 200.)

### PEOPLE v. CURPHEY et al.

### SAME v. KIRKBRIDE et al.

(Court of General Sessions, City and County of New York. July, 1911.)

1. EXTRADITION (§ 37*)—BAIL—LIABILITY OF SURETY.

Under a bail bond for the release of a person committed to await requisition proceedings from a foreign state, and to enable an arrest on the executive warrant to be made thereon, the liability of the surety extends to the production of the defendant in execution of any warrant, issued by the Governor of New York within the time for which the preliminary detention was ordered. on requisition from the Governor of the state at whose instance the preliminary arrest was made.

[Ed. Note.—For other cases, see Extradition, Cent. Dig. §§ 34, 44; Dec Dig. § 37.*]

2. EXTRADITION (§ 37*)—BAIL—LIABILITY OF SURETY.

Where persons indicted in Pennsylvania for obstructing justice and for contempt of court were arrested in New York, and after having been committed under the New York statutes, which provide for the prelim-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

inary arrest and detention of alleged fugitives from justice, were admitted to bail on an undertaking given by each, conditioned to appear in person before a justice of the Court of General Sessions at any time within 30 days, and at all times render himself amenable to the process of the court and render himself in execution of any warrant which might be issued by the Governor of New York, and the Governor subsequently refused to honor the requisition of the Governor of Pennsylvania, but at the same time honored a later requisition founded on a subsequent information for offenses based on the same transaction, and issued his warrant for the arrest and surrender of the defendants, but they did not appear, the sureties were not discharged by the refusal to honor the first requisition.

[Ed. Note.—For other cases, see Extradition, Cent. Dig. §§ 34, 44; Dec. Dig. § 37.*]

Motions by the District Attorney, on behalf of the People, to forfeit the bail bonds of Alfred G. Curphey and Thomas W. Kirkbride. Granted.

Robert S. Johnstone, Asst. Dist. Atty., for the People.

John D. Lindsay and George Gordon Battle, for the State of Pennsylvania.

Francis P. Garvan and Thomas W. Churchill, for defendants.

MULQUEEN, J.     On June 16, 1911, Alfred G. Curphey and Thomas W. Kirkbride were arrested on preliminary process as fugitives from justice of the state of Pennsylvania. They were brought before me in my capacity as a magistrate. A separate information was laid against each of them, and an examination of each was had in accordance with the provisions of the statute. Code Crim. Proc. §§ 828–830. It appeared from the examination that they were charged in the state of Pennsylvania with the crime of obstructing justice and contempt of court, and they had left the state of Pennsylvania and come to the state of New York, where they were found and arrested. Two requisitions, one for the surrender of each defendant, from the Governor of Pennsylvania on the Governor of New York, were put in evidence. These requisitions were produced by the agent of the state of Pennsylvania, who was on his way to Albany with them to present them to the Governor. To the requisition for the surrender of each defendant there was attached an authenticated copy of an indictment against him charging him with the offense above mentioned, contumaciously neglecting and refusing to obey a subpœna calling for his appearance as a witness in a certain civil action pending in Pittsburg, Pa. The date laid was June 14, 1911. The identity of the defendants was conceded. At the conclusion of the examination, the necessary facts appearing to justify the detention of the defendants to await requisition proceedings by the state of Pennsylvania, and to enable an arrest on the executive warrant to be made, their commitment was ordered; provision for the preliminary arrest and detention of alleged fugitives being contained in our state statutes (Code Crim. Proc. §§ 828–830), which are ancillary to the federal legislation on the subject of interstate rendition. An application was then made to me, in my

capacity as a judge of the Court of General Sessions, to admit the defendants to bail, and bail was fixed for each of them in the sum of $2,500. The order for the commitment of each defendant provided that in default of giving bail he be held in the custody of the keeper of the city prison for the period of 30 days, to enable his arrest under the warrant of the Governor of this state. Each of the defendants then gave bail, the National Surety Company becoming his surety. The taking of bail is "the acceptance by a competent court or magistrate of the undertaking of sufficient bail for the appearance of the defendant, according to the terms of the undertaking, or that the bail will pay to the people of this state a specified sum." Code Crim. Proc. § 551; People v. Torn, 110 App. Div. 676, 677, 97 N. Y. Supp. 523. The undertaking given by the defendant Curphey, signed and acknowledged by him as principal and by the National Surety Company, as surety, is as follows:

"An order having been made on the 16th day of June, 1911, by the Honorable Joseph F. Mulqueen, one of the justices of this court, that Alfred G. Curphey be held in the custody of the keeper of the city prison for the period of thirty days, exclusive of the day of the said arrest, to enable the arrest of the said Alfred G. Curphey to be made under the warrant of the Governor of this state, on the requisition of the executive authority of the state of Pennsylvania, and he having been duly admitted to bail in the sum of twenty-five hundred dollars by the Honorable Joseph F. Mulqueen:

"We, Alfred G. Curphey, principal, residing at the Ritz Carlton Hotel, in the said city of New York, and National Surety Company, a New York corporation, surety, residing at No. 115 Broadway, said city, hereby jointly and severally undertake that the above-named Alfred G. Curphey shall appear and shall be and abide within the jurisdiction of this court, and shall appear in person before the Honorable Joseph F. Mulqueen aforesaid on the 14th day of July, 1911, at any time within thirty days from the date hereof, and shall at all times render himself amenable to the process of the court; and shall render himself in execution of any warrant which may be issued by the Governor of the state in the proceedings aforesaid; and if he fail to perform either of these conditions that we will pay to the people of the state of New York the sum of twenty-five hundred dollars."

The undertaking given by Kirkbride is in the same terms. The undertakings having been accepted, the defendants were released from custody.

The provisions of law governing the commitment of the defendants and their admission to bail are contained in sections 830 and 831 of the Code of Criminal Procedure, which are as follows:

"Sec. 830. When and for what time to be committed. If from the examination under such warrant it appears to the satisfaction of the magistrate that the person under arrest is charged in such other state or territory with treason, felony or other crime and has fled from justice, the magistrate, by warrant reciting the accusation, must commit him to the proper custody in his county for a time specified in the warrant, to enable an arrest of the fugitive to be made under the warrant of the Governor of this state, which commitment shall not exceed thirty days, exclusive of the day of arrest, on the requisition of the executive authority of the state or territory in which he is charged to have committed the offense, unless he give bail, as provided in the next section, or until he be legally discharged.

"Sec. 831. His admission to bail. Any judge of any court named in section eight hundred and twenty-seven may, in his discretion, admit the person arrested to bail, by an undertaking, with sufficient sureties and in such sum as he deems proper, for his appearance before him at a time specified in

the undertaking, which must not be later than the expiration of thirty days from the date of arrest exclusive of such date, and for his surrender to be arrested upon the warrant of the Governor of this state."

It appears that, when the requisitions heretofore referred to were presented to the Governor of New York, he granted the accused persons a hearing before passing upon the demand for their surrender. He subsequently declined to honor those particular requisitions on the ground that the defendants were not physically present in the state of Pennsylvania on June 14, 1911, the date upon which the crimes charged in the accompanying indictments were alleged to have been committed. In the meantime, however, and on June 27th, the Governor of Pennsylvania made another requisition on the Governor of New York for the surrender of the defendants. This requisition was accompanied by an information made before a Pennsylvania magistrate, which charged the defendants with the offense of obstructing justice, conspiracy, and contempt. The offenses charged in the Pennsylvania information which accompanied this second requisition, and which was just as effective for extradition purposes as an indictment (In re Strauss, 197 U. S. 324, 332, 25 Sup. Ct. 535, 49 L. Ed. 774), were based upon the same transaction on which the indictments accompanying the first requisitions were predicated. The offenses were alleged to have been committed on June 13th. On July 8th, the Governor of New York honored the second requisition of the Governor of Pennsylvania and issued his rendition warrant for the arrest and surrender of the defendants. It was simultaneous with the honoring thereof that he declined to honor the first requisitions. The Governor's warrant was transmitted to the police commissioner of New York City for execution. On July 12, 1911, the warrant was produced before me in the Court of General Sessions, and it was stated in open court that the defendants had not surrendered themselves in execution thereof and that they could not be found. , The district attorney thereupon moved for the forfeiture of the undertakings. On July 14th, the specific date on which the undertaking required the defendants to appear, the matter was again brought before me in the Court of General Sessions. I directed the clerk of the court to call each defendant to come forward and appear before the court pursuant to the condition of his undertaking. The clerk of the court called each defendant. Neither of them responded. The National Surety Company, the surety, was then called, and counsel representing it stated that the surety company did not have the defendants in court and had not produced them. The district attorney then renewed the motion. The matter was then postponed to July 19th for argument and the submission of briefs, and, the defendants not having appeared or surrendered in execution of the Governor's warrant, the district attorney again moved that the undertakings be forfeited.

[1, 2] Counsel for the surety opposed the forfeiture, contending, in substance, that the undertakings only required the surrender of the defendants in execution of a warrant issued on the first-mentioned requisitions and the indictments which accompanied them, and that

the liability of the surety ceased when the Governor declined to honor those requisitions, and that the surety was not bound to produce the defendants in execution of the warrant which the Governor had issued. There is much to be said in favor of this interpretation of the surety's obligation, but a careful consideration of the authorities has convinced me that that contention cannot be sustained. The undertakings must be read in connection with the statute under which they were given. People, etc., v. McKenna, 62 App. Div. 327, 330, 331, 70 N. Y. Supp. 1057.

Section 830 of the Criminal Code provides for the commitment of the defendant "for a time specified in the warrant," to enable his arrest "to be made under the warrant of the Governor of this state, which commitment shall not exceed thirty days, exclusive of the day of arrest." Section 831, which provides for an admission to bail, requires that the undertakings shall be for the appearance of the defendant before the judge "at a time specified in the undertaking, which must not be later than the expiration of thirty days from the date of arrest exclusive of such date, and for his surrender to be arrested upon the warrant of the Governor of this state.

In Pernetti v. People, 99 App. Div. 391, 91 N. Y. Supp. 210, affirmed 181 N. Y. 556, 74 N. E. 1124, a prisoner had been held by a coroner to answer a specific charge of homicide. Pernetti became his surety, giving an undertaking which, after reciting that an order had been made that the prisoner "be held to answer upon a charge of homicide," was conditioned that the prisoner "shall appear and answer the charge above mentioned in whatever court it may be prosecuted, and shall at all times render himself amenable to the orders and process of the court." The grand jury dismissed the charge of homicide, but on the same day found an indictment against the defendant for perjury, based upon testimony which he had given at the coroner's inquest. He was called upon to answer the indictment for perjury, and, having failed to do so, the undertaking was forfeited and judgment entered thereon. It was held in a proceeding to vacate the judgment that the surety was liable. The theory of the decision was that by giving bail the custody of the prisoner was transferred from the jailer to the surety, who, in legal effect, became a jailer of the prisoner's own choosing, and the surety was held obligated to produce the prisoner just as the jailer could have produced him when required by the orders and process of the court. If he had remained in jail, the jailer could have produced him to answer the perjury indictment, and, consequently, the surety was obligated to do likewise. See, also, People v. Torn, 110 App. Div. 676, 677, 97 N. Y. Supp. 523; People v. Gillman, 125 N. Y. 372, 26 N. E. 469; Champlain v. People, 2 N. Y. 82; People v. Russell, 35 Misc. Rep. 765, 72 N. Y. Supp. 1, affirmed 67 App. Div. 620, 74 N. Y. Supp. 1141.

I think the decision in the Pernetti Case controls the present case. It is true that the statute under which the undertaking was given in the Pernetti Case (Code Crim. Proc. § 568) contained a provision that the defendant would at all times render himself amenable to the order and process of the court, and that no such provision is con-

tained in the statute under which the undertakings involved in the present cases were given, although the undertakings contained a recital to that effect. Even if that provision of the present undertakings be eliminated as not being required by the statute, the statute contains a specific provision requiring the undertaking to be given for the appearance of the defendant before the court "at a time specified in the undertaking." · The time specified in each of the present undertakings is July 14th, which is within 30 days of the date of arrest. The failure of the defendants to appear when called before the court on July 14th constituted a default in that specific condition. If they had remained in custody instead of being released on bail, the keeper of the prison would have produced them before the court on July 14th. The surety was required to do likewise. Moreover, the statute provides that the undertaking shall be for the surrender of the prisoner "to be arrested upon the warrant of the Governor of this state." Code Crim. Proc. § 831. The undertakings contain in addition the words "in the proceedings aforesaid." Those words are not contained in the statute, and, as I have before stated, the undertakings must be read in connection with the statute to determine the extent of the surety's liability thereunder. Moreover, those words cannot be construed to have reference to the proceeding before the magistrate; they must refer to the proceeding before the Governor, instituted by requisition of the Governor of Pennsylvania. Those two proceedings are distinct and entirely independent of each other. In re Strauss, 126 Fed. 327, 331, 63 C. C. A. 99. Neither the existence nor production of a requisition is an essential part of the preliminary proceedings before the committing magistrate. Ordinarily the requisition is not in existence at that time. The bail is not given for an appearance before such magistrate, but for an appearance before the judge who admits to bail and for a surrender in execution of the Governor's warrant issued on requisition from the Governor of the demanding state. Ordinarily the committing magistrate has no power to admit to bail in extradition cases (In re Barlow, 141 App. Div. 641, 127 N. Y. Supp. 542), and it was not in my capacity as a committing magistrate that I admitted to bail in these cases, but in my capacity as a judge of the Court of General Sessions. When a magistrate has committed the prisoner to await extradition, his functions. as such, with respect to the case, cease.

Counsel for the defendants relies upon the case of People v. Felton, 36 Barb. 429. I do not think that case is in point. There, there was an indictment pending against the principal. He was arraigned, pleaded not guilty, and Felton became surety for his appearance at the next term of court to answer the indictment; the recognizance being entered in the minutes.. The principal appeared at the term of court for which he was recognized, when another indictment was found against him for the same offense. In the afternoon of the same day a third indictment was found and filed. On motion of the district attorney the first two indictments were then quashed and the prisoner departed from court. The next day an order was entered in the minutes on motion of the district attorney which purported to recog-

nize the surety for the principal's appearance to answer the third indictment—an obligation to which the surety never assented and which he never assumed. The court held that the surety was not liable under the order so entered purporting to extend his recognizance to the third indictment, and that when the defendant had been produced and answered the indictment specified in the recognizance entered into by the surety, and that indictment was quashed on motion of the district attorney in the defendant's presence, it was a discharge of the recognizance and a permission for the defendant to depart, just as an acquittal would have been. The court also drew a clear distinction between an undertaking to answer. a specific charge upon an indictment preferred and an undertaking to answer something to be preferred. In the present case the undertaking was not given to answer a particular Pennsylvania indictment or information or a particular charge preferred; it was not given for any appearance before the magistrate in the proceeding preliminary to requisition. It was not to answer something done; it was to answer something to be done; to answer in a proceeding to be instituted. It was directly analogous to an undertaking to await the action of a grand jury. The state of Pennsylvania could, after securing the surrender of the fugitive, put him on trial for any offense committed in that state. People ex rel. Post v. Cross, 135 N. Y. 536, 32 N. E. 246, 31 Am. St. Rep. 850; Commonwealth v. Wright, 158 Mass. 149, 33 N. E. 82, 19 L. R. A. 206, 35 Am. St. Rep. 475; Lascelles v. Georgia, 148 U. S. 537, 13 Sup. Ct. 687, 37 L. Ed. 549.

Prosecution is not limited to the extradition offense; and I do not think that, having secured the preliminary detention of the prisoner, the state of Pennsylvania was limited to making requisition for the offense with which the prisoner was shown to have been charged in the preliminary proceeding any more than a grand jury would be limited to finding an indictment for the offense for which the prisoner was held, in order to render the surety liable for the production of the defendant. I think the meaning of the statutory provision relating to bail in extradition cases is that the liability of the surety extends to the production of the defendant in execution of any warrant that may be issued by the Governor of this state within the period of time for which the preliminary detention was ordered on requisition from the Governor of the state at whose instance the preliminary arrest was made and the preliminary detention had. The fact that the Governor declined to issue a warrant on the first requisition does not change the situation. It was conceded even in the dissenting opinion in the Pernetti Case that the dismissal of the charge by the grand jury did not ipso facto discharge the liability on the recognizance. It may be that legal steps could be taken by a prisoner, held on preliminary process to await extradition, to procure his release by the court in a proper case before the full period of the commitment had expired; but the refusal of the Governor to honor the first requisition would neither ipso facto operate to release the defendant, if in prison, before the expiration of the time of commitment, nor would it release the bail from liability on the undertaking.

It is further suggested in behalf of the defendants that the undertaking should be strictly interpreted in their favor. The Appellate Division has said:

"A contract of suretyship is to be construed in accordance with the same rule that applies to the interpretation of any other written instrument. The limitation of liability is not upon the interpretation, but in application of the contract after interpretation when the rule of strictissimi juris applies." Sachs v. American Surety Co., 72 App. Div. 60, 63, 76 N. Y. Supp. 335, citing Smith v. Molleson, 148 N. Y. 241, 42 N. E. 669.

I have discussed the matter at length because the subject of interstate rendition is an important one. The right of a state to demand the surrender of such persons as have offended against its laws and departed from its jurisdiction is conferred by the federal Constitution, which also imposes on the state in which the fugitive is found the duty of delivering him up. That provision of the Constitution was adopted to promote justice and to aid the states in enforcing their laws by insuring that flight over an imaginary line should not secure to the fugitive immunity from arrest and prosecution. It was intended to include, and does include, every act forbidden and made punishable by the law of the state where it was committed, irrespective of whether or not it would constitute a crime under the law of the state to which a demand for a surrender was presented. Kentucky v. Dennison, 65 U. S. 66, 16 L. Ed. 717; Ex parte Reggel, 114 U. S. 642, 5 Sup. Ct. 1148, 29 L. Ed. 250; People ex rel. Lawrence v. Brady, 56 N. Y. 182. It is the policy of the law that each state shall determine what acts committed therein shall be regarded as crimes, and to require all other states to deliver up persons charged with the commission of such acts, who have departed from the state where they were committed, upon the demand of the executive authority thereof. The federal statute (U. S. Rev. Stat. § 5278 [U. S. Comp. St. 1901, p. 3597]), under which proceedings for the extradition of fugitives are instituted, was designed by Congress as a method of carrying into effect the constitutional provision. Roberts v. Reilly, 116 U. S. 80, 94, 6 Sup. Ct. 291, 29 L. Ed. 544; Kentucky v. Dennison, 65 U. S. 66, 104, 16 L. Ed. 717. That provision is a compact which should be rendered as effectual as possible; regard being had of course to all the just rights of the accused. The Supreme Court of the United States has announced its adherence to the doctrine that a broad and liberal interpretation of the laws relating to the extradition of fugitives is essential to the harmony and welfare of the states, and that they should be construed so as to carry out the purposes for which they were adopted. In re Strauss, 197 U. S. 324, 333, 25 Sup. Ct. 535, 49 L. Ed. 774; Appleyard v. Massachusetts, 203 U. S. 222, 27 Sup. Ct. 122, 51 L. Ed. 161; McNichols v. Pease, 207 U. S. 100, 112, 28 Sup. Ct. 58, 52 L. Ed. 121. The state statutes which were adopted in aid of the federal provisions should receive a similar construction. Their object was to insure that the defendant would be at hand when a warrant for his surrender had been issued, in order that the state might perform its full duty.

In the case of In re Barlow, 141 App. Div. 641, 655, 127 N. Y.
Supp. 542, Laughlin, J., said:

"The duty owing to other states under the extradition laws required that
the utmost care should be exercised to hold alleged fugitives from justice
until extradition warrants may be obtained in due course from the execu-
tive of the state. There is no right to bail in extradition cases, excepting
as the state Legislature may so provide by statutes not inconsistent with
the acts of Congress, on arrest of fugitives from justice pending extradition
proceedings. * * * The statutory provisions for the arrest and holding
of fugitives from justice in advance of the issuance of an extradition war-
rant (Code Crim. Proc. §§ 828–831) were designed to make extradition pro-
ceedings effectual. * * *"

The admission to bail pending requisition proceedings is entirely
discretionary, and so careful was the Legislature that it empowered
only the justices of the higher courts to admit to bail. The Legisla-
ture also fixed 30 days as a reasonable period within which proceed-
ings for the extradition of a fugitive might be perfected and a war-
rant for his surrender issued, and the statute provides expressly for
his detention for a specific time, not to exceed 30 days. In these
cases the detention ordered was for the period of 30 days. The un-
dertakings must be construed to cover the same period. The execu-
tive warrant was issued within that time. If bail had not been given,
the defendants would have been in the custody of the keeper of the
city prison, who could have produced them in the execution of the
warrant. I therefore am of the opinion that the surety was obligated
by the undertakings to produce the defendants before the court on
July 14th and to surrender them in execution of the Governor's war-
rant which was issued. Not having done so, the surety has defaulted,
and the recognizances must be forfeited.

An order may be entered in each case accordingly.

Ordered accordingly.