Miles F. McDonald, J.
This is an application by the surety to vacate and set aside a judgment in the sum of $500 resulting from a bail forfeiture. The facts briefly are as follows:
On May 6, 1963, the surety’s principal, Frank Mariani, on whose behalf the surety executed its recognizance in the sum of $500 in favor of the People of the State of New York, appeared in the Criminal Court of the City of New York, County of Kings, and pleaded guilty to the charge of driving while intoxicated. The court then sentenced the surety’s principal to either pay a $200 fine or serve 30 days in jail. The matter was then adjourned to May 10, 1963, in order to permit the surety’s principal more time to raise the required fine. Thereafter, on May 10, 1963, before the same court, the matter was again adjourned to May 17,1963, for the same purpose. On May 17,1963, Mariani failed to appear and the court declared the surety’s bond forfeited. Subsequently, a judgment was entered against the surety in consequence of the aforesaid bail bond forfeiture. It now appears that since the making of the motion, that the surety’s principal surrendered to the proper authorities on June 4, 1963 and was committed to jail for a period of 30 days.
The surety upon this application contends that when the court pronounced sentence upon the defendant, it was discharged from any further obligation under the bond and that the extension of time to pay the fine, particularly without the consent of the surety, was a violation of the surety’s rights and without authority in law. The surety asserts that in any event the forfeiture should be remitted because the defendant has since surrendered and is in the custody of the law, and avers that the People have sustained no substantial impairment of rights nor have the People incurred any extraordinary expense by virtue of the slight delay in the prosecution of the case.
The issues to be determined upon this application are novel. A proper determination rests upon the interpretation of the *490 written undertaking executed by the surety. It is, however, well to apprise all sureties who may execute undertakings in accordance with the provisions of section 581 of the Code of Criminal Procedure, the nature and extent of their legal obligations and liability. The contract of suretyship in this case was entered into in accordance with the provisions of section 581 of the Code of Criminal Procedure and contained a provision as follows: “ The above named defendant shall appear and answer the charge, in whatever court it may be prosecuted; and shall at all times render himself amenable to the orders and process of the court, and if convicted shall appear for judgment and render himself in execution thereof.” (Emphasis supplied.)
In Sachs v. American Sur. Co. (72 App. Div. 60, 63, affd. 177 N. Y. 551) the court statedA contract of .suretyship is to be construed in accordance with the same rule that applies to the interpretation of any other written instrument. The limitation of liability is not upon the interpretation but in application of the contract after interpretation when the rule of strictissimi juris applies. (Smith v. Molleson, 148 N. Y. 241.) If there be ambiguity in the contract, it is construed in favor of the person who has accepted it and expects to take benefit under it. (Gamble v. Cuneo, 21 App. Div. 413, affd. 162 N. Y. 634.) “ In arriving at the correct construction of such a contract it is always permissible to take into consideration the circumstances and surroundings of the parties at the time when the contract was made, and such construction will be given to it as will carry out the evident intent of the parties to the instrument ”.
A reading of the contract discloses that the intent of the parties is clearly expressed. The terms of the undertaking are definite and are not ambiguous: “ ‘ In the construction of contracts, where there is no ambiguity, it is the duty of the court to determine their meaning. Moreover, where the terms and language of the contract are not disputed, its legal effect is a question of law to be determined by the court. It is always the duty of a court, in construing a written instrument, if possible, to ascertain the intention of the parties ’ (Sinkwich v. Drew & Co., 9 A D 2d 42, 45.)
In People v. Torn (110 App. Div. 676, 679), the Appellate Division in reversing Special Term’s vacatur of a judgment against a surety entered upon a forfeiture of a recognizance, stated: “ We are of opinion that the undertaking is to be construed as a whole (Sachs v. American Surety Co., 72 App. Div. 60), and that considering all of its provisions together and the purpose for which it was given the intention of the parties and *491 the true construction are sufficiently expressed and free from ambiguity to constitute it an enforcible contract.”
There is authority both that a bail bondsman’s liability ends with the sentencing of his principal, then present in court, and to the effect that such liability does not end until the defendant surrenders himself after the sentence in execution of the penalty imposed. There is, however, no conflict in the two lines of authorities. If the extent of the obligation of the bond, or the statutes involved, is that the accused shall appear and answer the charge against him, then the cases hold that the sentence works an implied change of custody from the bail to the law and the bondsman is thereafter exonerated. But if the obligation of the bond or-the statutes involved, as in the instant case, is that the accused shall not only appear but also that he will abide the orders of the court or surrender himself in execution of such order, then the bondsmen are not exonerated at the time of sentence.
The following quotations from Corpus Juris Secundum (vol. 8, § 79, subd. g) announce the general rules under the above-stated bond conditions:
‘ ‘ Where the bond is so conditioned as only to require the sureties to have their principal in court until his case is finally determined, liability on the bond is terminated when sentence is imposed, and the sureties are discharged unless they consent to a continuation of the bond, since, under such circumstances, the custody of accused passes from his bail to the proper officer. * * *
' ‘ ‘ Sureties on a bond conditioned that the principal shall abide the judgment of the court, or that he will appear for judgment and render himself in execution thereof, are not discharged by a conviction and pronouncement of sentence, and the principal must further submit to such punishment as shall be adjudged (Emphasis supplied. See, also, Ann. 20 A. L. B. 629.)
In People v. Gillman (125 N. Y. 372, 376) the court, in construing the provisions of an undertaking similar to the one in the case at bar, stated: ‘ ‘ The undertaking binds the surety for the appearance of the prisoner, not merely to answer to that specific charge upon which he was admitted to bail, but, also, that he ‘ shall at all times render himself amenable to the order and process of the court, and, if convicted, shall appear for judgment and render himself in execution thereof. ’ While he is in custody, whether that of the sheriff or surety, he is held to appear as well upon any other charge of crime for which he may be - subsequently indicted. The undertaking is, in effect, that the defendant in the proceedings shall be kept in custody *492 and subject to the order of the court until discharged. When that occurs, and not till then, is the surety released.”
In Pernetti v. People (99 App. Div. 391, 394), the Appellate Division, First Department, in referring to the foregoing statement in Cillman (supra) stated: “ This is not a mere dictum. It is a statement of the law and is part of the reasoning of the court which induced it to hold that the defendant in that case was liable upon a bail bond.” (See, also, Seeley v. Evans, 19 Wend. 459; People v. Stager, 10 Wend. 431.)
The Supreme Court of North Carolina in State v. Schenck (138 N. C. 560, 564), cited with approval the ruling in People v. Stager (supra) as follows: “ In People v. Stager, 10 Wend. 431, we find an instructive discussion of the matter by Savage, C. J., the substance of which, being briefly stated, is that a person bound by a recognizance is not at liberty to depart after once making his appearance in court, but he must remain until discharged, and not quit the court, without leave, at any stage of the trial, the object being not only to cause the accused to appear and answer the charge, but to submit to such punishment, if any, as shall be adjudged ’ ’.
In Commonwealth v. Turpin (98 Ky. 9) the Court of Appeals of the State of Kentucky, in determining the rights and obligations of a surety who executed a bail undertaking, containing a similar provision as in the instant case and where the court allowed the principal to go from custody for the purpose of obtaining the amount of the fine imposed upon conviction, held the surety liable upon his disappearance without its payment. The court stated: ‘ ‘ By the terms of the bail bond, as shown in the record, the undertaking of appellee not only covered the appearance of Portwood in court at a time fixed, but it is further stipulated that he ‘ shall at all times render himself amenable to the orders and process of said court in the prosecution of said charge and if convicted shall render himself in execution thereof; or if he shall fail to perform either of these conditions, that he will pay the Commonwealth of Kentucky the sum of, etc.’ It seems to us that the conditions of this undertaking are not fully met, nor its obligations, as against the surety, fully discharged, merely by the appearance in court of the principal at the time fixed or by his trial and conviction. By the terms of the bond, appellee has undertaken that Portwood, ‘ if convicted, shall render himself in execution thereof,’ and, by the further express terms of the obligation, appellee is to be responsible 1 if he shall fail to perform either of these conditions.’ ” (See, also, United States Fid. & Guar. Co. v. Justice Ct., 99 Cal. App. 2d 683.)
*493 The surety herein may not complain that it received no notice or did not consent to any adjournment in this case. “ It seems to be settled that a surety who has given an undertaking for the appearance of his principal to answer to an indictment at a given term of court is responsible for his appearance, not only on the first day of the term, but on any subsequent day thereof without notice.” (People v. Parisi, 217 N. Y. 24, 27.)
The wording of the undertaking clearly states that the defendant, if convicted, “ shall appear for judgment and render himself in execution thereof ”. When the court ordered the forfeiture, the defendant was not “ in execution ” of the judgment by the court. The meaning of the words ‘1 in execution thereof ’ ’ as set forth in section 581 of the Code of Criminal Procedure is nowhere defined in the Code of Criminal Procedure. “ In execution ” means “to effect the object of” (Black’s Law Dictionary [3d ed.]). “ £ [A] fine imposed is a judgment, in a criminal case. The adjudication is a conviction, and the commitment in consequence thereof is execution ’ ”, (Matter of Shull, 221 Mo. 623, 627.)
In Matter of Comolli (78 Vt. 337, 342), the court stated: “ It is urged on the part of the State that the relator’s custody in the hands of the sheriff on the mittimus is a custody in execution. Thus the question whether the relator is ‘ in execution ’ is presented. The meaning of these words is nowhere defined in the Constitution and resort must be had to the common law to ascertain it. In Rex v. Wilkes, at page 2540, Mr. Justice Yates says: ‘In a criminal case, if the party be convicted, and a capias ad satisfaciendum issues, and he is taken upon it, he is in execution to make satisfaction. ’ And in that case the defendant being in the custody of the marshal on the capias utlagatum, it was the opinion of the court, that he was in execution.”
Thus it is clear that in the instant case the defendant was not ‘ £ in execution ’ ’ of the judgment of the law until he paid the fine imposed or submitted himself for imprisonment in default thereof. ‘£ At common law, when bail was given, and the principal relieved from the custody of the law, he was regarded, not as freed entirely, but as transferred to the friendly custody of his bail. They had a dominion over him, and it was their right at any time, to arrest and surrender him again to the custody of the law, in discharge of their obligation. They were sometimes said to be his jailers, and to have him always upon the string, which they may pull when they please, in order to surrender him in their own discharge. * * * The extent of their duty and obligation, therefore, is to see to it that the prin *494 cipal, at all times during the term of the court to which he is bound to appear, is present to answer the call of the court and to do what the law may require of him. If they fail in this respect they have not kept him under the power of the court as if he had been in the custody of its proper officer. It must not be inferred that the surety is thereby required to do something not stipulated in his bond, for the obligation thus imposed is nothing more than what the law reasonably considers to be within the condition of his undertaking. It is said by the highest authority that a recognizance (or bail bond) in general binds to three things: (1) to appear and answer either to a specified charge or to such matters as may be objected; (2) to stand [to] and abide the judgment of the court; and (3) not to depart without leave of the court; and that each of these particulars are distinct and independent.” (State v. Schenck, 138 N. C. 560, 561-562, supra.)
It therefore follows that when the principal in this case pleaded guilty and failed thereafter to appear to abide the judgment of the court either to pay the fine or surrender him for imprisonment, the surety was, in the absence of a surrender of the principal by him, or the principal’s discharge by the court, liable upon the recognizance. The permission given by the court to the principal after entering a plea of guilty to depart and return at a later date in order to secure the funds to pay the fine was not a legal discharge and until the principal complied with the judgment of the court, the obligation of the surety was not fulfilled, for until the judgment of the court was complied with, the principal did not render himself “ in execution of the judgment ’ ’, to which the surety obligated itself under the terms of the undertaking.
Therefore, the forfeiture was proper and legal and the civil judgment that followed and entered against the surety was valid. However, the subsequent circumstance of the principal’s return to the court to surrender himself in execution of the judgment requires this court in the interests of justice to grant a remission for to let the judgment stand would under the circumstances of this case be a harsh, unjust and unreasonable penalty. “ Where a defendant is produced within a reasonable time after forfeiture, a remission will be granted if the People have not lost any rights as a result of his nonappearance, especially if his failure to appear was other than deliberate and wilful (People v. Fiannaca, 306 N. Y. 513, 516-517.)
It does not appear in this case that the People have lost any rights nor that the nonappearance was deliberate and willful.
*495 Under such circumstances, the motion to vacate the forfeiture and judgment is granted upon the payment of $50 costs.
The cases cited by the attorney for the surety in his brief are inapplicable to the situation presented in this case. Furthermore, the reliance placed by the surety that section 487 of the Code of Criminal Procedure governs the instant case is without merit. Section 487 of the Code of Criminal Procedure relates only to the power of the court to commit a defendant to imprisonment and fine. It has no application to a bail forfeiture.
Settle order in accordance with the terms of this decision.