JOHN P. JACKSON et al., as Administrators of the Estate of MAURICE J. SMITH, Deceased, Appellants, v. HOWARD D. SWART et al., as Executors of GEORGE G. DECKER, Deceased, Respondents, Impleaded with Others.

GUARANTY. An instrument delivered upon the sale of a foreign note, secured by a foreign mortgage, is not a mere guaranty of collection of the note, but a special contract in which the parties bind themselves to do certain things, and in which the guarantor assumes certain obligations, where it states: "That in consideration of said sale the undersigned

guarantee the collection in full of said note, with 7 per cent interest on same, upon the following conditions:

"In case of a default in the payment of said note or interest due on same, or a failure to comply with the requirements named in the Trust Deed securing said note the holder of said note shall, at the request of the undersigned, at once forward said note and Trust Deed for collection.

"Said Trust Deed shall be foreclosed in the usual course provided by law and the land sold. In case there is no bid sufficient to cover the debt and costs the land described in the Trust Deed may, at the option of the undersigned, be bid in in the name of the holder of this note.

"In case the land is so purchased the undersigned hereby bind themselves to take full charge of said land and sell same within two years after the above-described note matures, and in case said land does not sell for a sufficient amount to pay the debt in full, to make good and pay any deficiency."

*Jackson* v. *Decker*, 14 App. Div. 415, reversed.

(Argued June 13, 1905; decided October 3, 1905.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered December 15, 1902, modifying a judgment in favor of defendants entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Nelson Smith* for appellants. The assignments containing the agreements of the defendants Decker and Moore, although spoken of as guaranties, are not guaranties strictly speaking. They are agreements providing for the collection of the notes and mortgages out of the mortgaged premises in a particular way and by specially provided steps or modes of procedure. (*Agnard* v. *Parker*, 81 Wis. 581; *Jones* v. *Jones*, 16 M. & W. 699; *Smith* v. *Molleson*, 148 N. Y. 241.) The defendants having refused to request the notes and mortgages to be forwarded for collection thereby prevented the first particular step towards the foreclosure. This in itself should make the defendants liable without a foreclosure. (*Risley* v. *Smith*, 64 N. Y. 576; *Shell* v. *Plum*, 55 N. Y. 592; *Amos* v. *Oakley*, 141 Mass. 413; *Howard* v. *Daly*, 61 N. Y. 362;

*Gallagher* v. *Nichols,* 60 N. Y. 438, 448; *Burtis* v. *Thompson,* 42 N. Y. 446.) It was incumbent upon the defendants to see that the taxes on the mortgaged premises in Kansas were paid to preserve the lien of the mortgages. The non-payment of the taxes resulting in the tax sales and deeds, and the destruction of the liens of the mortgages, must be attributed to the default of the defendants as between them and the plaintiffs. (*People* v. *G. Ins. Co.,* 91 N. Y. 180; *Risley* v. *Smith,* 64 N. Y. 576; *Genet* v. *D. & H. C. Co.,* 136 N. Y. 593; Story on Cont. § 336a.)

*J. K. P. Jackson* for respondents. The decision of the appellate court modifying the decision of Justice SMYTH was as liberal to plaintiffs as was possible in the case, and one fully sustained by the law upon all the facts shown. (*Craig* v. *Parkis,* 40 N. Y. 181; *McMurray* v. *Noyes,* 72 N. Y. 523; *N. Ins. Co.* v. *Wright,* 76 N. Y. 445; *S. S. Nat. Bank* v. *Sloan,* 135 N. Y. 371.) The guarantor in this case is relieved from liability by the laches of plaintiffs, as they neither presented the coupons or notes at the Girard National Bank in Philadelphia, the place where they were made payable, when the same became due, nor were either of said notes or coupons ever protested, nor was defendant Decker notified of default until a long time after they became due and payable, and was never notified of their presentment, non-payment and dishonor before the commencement of this action. (*Durand* v. *Bowen,* 35 N. W. Rep. 644; Story on Cont. 970, 973; 19 Am. & Eng. Ency. of Law, 295; Daniel on Neg. Inst. 928; *Conklin* v. *Crandell,* 1 Keyes, 228; *Artisans Bank* v. *Backus,* 36 N. Y. 100; *Arnold* v. *Kinloch,* 30 Barb. 44; *O. Nat. Bank* v. *Taut,* 50 N. Y. 474; *Buckley* v. *Bentley,* 42 Barb. 446; *Douglas* v. *Reynolds,* 7 Pet. 126; *Com. Bank* v. *Varnum,* 49 N. Y. 269.)

O'BRIEN, J. The plaintiffs, as the personal representatives of Maurice J. Smith, deceased, sought to recover against the defendants upon three negotiable promissory notes amounting

in the aggregate to $2,000, executed at various times between the 24th of May, 1887, and the 27th of April, 1888. These notes were all made by parties living in Kansas, the identity of whom the record does not disclose further than the name. They were all made payable to the same payee, who indorsed them without recourse to the defendants or some of them. They were payable five years after date at the Girard National Bank of Philadelphia, and attached to them were interest coupons, at the rate of seven per cent, payable semi-annually. It appears that the defendants themselves or some of them paid the interest or most of it upon these notes up to the time that they became due. But, so far as appears, the makers never paid anything on any of them. They were not known at the bank where the notes were payable, and no funds were ever deposited to meet either principal or interest.

At the time of the delivery of these notes to the plaintiffs' testator the defendants delivered with them an instrument in writing which it is claimed was a guaranty of the collection of the several notes. This action is based upon this instrument as well as the notes themselves. The courts below have held that the paper was simply a guaranty of collection and the plaintiffs have been defeated on that ground. If the instrument is to be interpreted as a guaranty of collection and nothing else, then beyond all doubt the case has been correctly decided. But we think that while the paper does contain words of guaranty of the collection of the notes on the part of the defendants, it does in legal effect contain much more. It is, we think, not a mere guaranty of collection but a special contract in which the parties have bound themselves to do certain things, and in which the defendants had assumed certain powers and obligations touching the collection of the notes which will be hereafter pointed out. This paper also contained a transfer of a grant or mortgage by the makers of the notes of certain lands in Kansas as a security for their payment when they became due.

As this written instrument is the fundamental basis of the present action it is proper to state that the instrument accom-

panying each note is identical with the others or substantially so, and in order to get a clear view of the legal scope and effect of the paper, it should be set out in full.

" *May 24th*, 1887.

" This contract witnesseth, that the undersigned have this day sold to M. J. Smith the following described loan, viz.: One certain note signed by Thomas D. Henderson for $1,000, dated May 1st, 1887, payable to the order of A. C. Wilcox five years after date, with seven per cent. interest from date, and secured by Trust Deed of same date with said note to E. Heliker, Trustee, upon lots 1, 2, 3 and 4, Section 6, Township 21, Range 10, in Rice County, Kansas, executed by Thomas D. Henderson. That in consideration of said sale the undersigned guarantee the collection in full of said note, with 7 per cent. interest on same, upon the following conditions :

" In case of a default in the payment of said note or interest due on same, or a failure to comply with the requirements named in the Trust Deed securing said note the holder of said note shall, at the request of the undersigned, at once forward said note and Trust Deed for collection.

" Said Trust Deed shall be foreclosed in the usual course provided by law and the land sold. In case there is no bid sufficient to cover the debt and costs the land described in the Trust Deed may, at the option of the undersigned, be bid in in the name of the holder of this note.

" In case the land is so purchased the undersigned hereby bind themselves to take full charge of said land and sell same within two years after the above described note matures, and in case said land does not sell for a sufficient amount to pay the debt in full, to make good and pay any deficiency."

If this instrument contains any ambiguous words or expressions it is to be construed against the surety and not against the plaintiffs. (*Smith* v. *Molleson*, 148 N. Y. 241.)

If the paper is carefully examined it will, we think, be found to contain much more than a mere guaranty of collection.

All the provisions and conditions contained in it are equally binding upon the defendants as upon the plaintiffs.

*First.* "In case of a default in the payment of said note or interest due on same, or a failure to comply with the require-ments named in the Trust Deed securing said note, the holder of said note shall, at the request of the undersigned, at once forward said note and Trust Deed for collection." The undersigned, or, in other words, the defendant, retained upon the transfer of the notes the right and the power to collect them and to enforce the security given for their payment. To what place was the holder of the note to send the notes for collection? Obviously, to such place as the undersigned should designate in the request, and the holder could not know where to send them until the request was made. The time within which the undersigned might make the request was not limited. They could make it at any time and until the request was made or the right of the defendants to collect in some way waived or relinquished, the holder of the note could not know what to do in the premises. It is obvious from this provision of the instrument that the defendants retained the right to control the collection of the notes and the enforcement of the security. They could do that in their own way and at such time as suited their convenience or pleasure.

*Second.* The next provision of the instrument is equally significant. It provides that "said Trust Deed shall be fore-closed in the usual course provided by law and the land sold. In case there is no bid sufficient to cover the debt and costs, the land described in the Trust Deed may, at the option of the undersigned, be bid in in the name of the holder of this note." It is clear from this language that the defendants retained the right to bid in the property when sold at fore-closure. They could bid it in in the name of the holder of the note, although he might not have been a party to the proceeding. The defendants' object in retaining this right over the collection of the debt and the securities is obvious. It was not intended that the holder of the note himself should

foreclose the mortgage and bid in the land, since he might then make a nominal bid and hold the defendants for any deficiency, and to avoid this the defendants retained the right to bid in the land themselves.

*Third.* Then it is further provided "in case the land is so purchased the undersigned hereby bind themselves to take full charge of said land and sell same within two years after the above described note matures, and in case said land does not sell for a sufficient amount to pay the debt in full, to make good and pay any deficiency." It will be seen by the last clause of this paragraph that the defendants bound themselves to pay the notes unless a sufficient amount for that purpose was realized from a sale of the land. Is was not necessary for the holder of the note to pursue the makers or to procure a personal judgment against them. The defendants became liable for the payment of the debt unless it was collected from the property pledged as security. Whether the security should prove sufficient would depend upon a sale made after the foreclosure and within two years after the note matured. The defendants, by this provision, secured to themselves not only the right to collect the notes and enforce the security, but to bid in the property themselves and then retain the title for two years in order to determine whether or not it should ultimately prove sufficient to pay the debt.

The several provisions of this instrument must be read together and must be construed as binding upon the defendants as well as the plaintiffs. It is apparent when the paper is carefully examined that the defendants upon the transfer of the notes retained the power and right not only to collect them in their own way, but to bid in the property and hold it for two years thereafter. Under these circumstances, it is obvious that the holder of the note could never know when to proceed to collect them until the defendants had in some way waived or renounced the right, which they retained in themselves and it is obvious also that it was impossible for him to tell whether upon the foreclosure of the securities he could

become the owner of the land or not. It is proper here to state that after the notes matured, the holder requested the defendants to proceed to collect them, which request was refused. We think that under the terms of the written instrument, which was delivered with the notes, the defendants assumed such relations to them and to the security for their payment, that it was their duty to move in the premises or to relinquish the rights secured to them by the conditions of the agreement referred to. Knowing all the facts and circumstances under which they had transferred the notes, and knowing the character and location of the property embraced in the trust deed, they had no right to look on and allow the property to be swept away by taxes imposed by the state. It seems that the tax sales which were made of the land gave no right of redemption. The sale of the property and the purchase of it by the state transferred the title in fee, and if the land was ever of any value, its loss as security for the debt is attributable to the defendants rather than to the plaintiffs.

The judgment should be reversed and a new trial granted, costs to abide the event.

Cullen, Ch. J., Gray, Bartlett, Haight, Vann and Werner, JJ., concur.

Judgment reversed, etc.