In the Matter of LEO J. PALMER, Respondent, against FRANCIS T. SPAULDING, as Commissioner of Education of the State of New York, et al., Appellants.

Argued May 20, 1949; decided July 19, 1949.

*Nathaniel L. Goldstein, Attorney-General (Henry S. Manley and Wendell P. Brown* of counsel), for appellants. I. The finding that Dr. Palmer is or has been addicted is supported by substantial evidence. II. The medical grievance committee used the special competencies of its members to evaluate the evidence, not as a substitute for it. (*Matter of Tompkins* v. *Board of Regents,* 274 App. Div. 354.)

*Lawrence Conboy* for respondent. I. The record contains no competent proof that petitioner is a narcotic addict which was the basis of the suspension order. II. The finding of the department as to drug addiction is opposed to the clear preponderance of the evidence.

LOUGHRAN, Ch. J. Upon a report of its Committee on Discipline, the Board of Regents on January 16, 1948, accepted and approved so much of an earlier report of its Medical Committee on Grievances as (1) found the petitioner — a physician — to be addicted to the use of narcotic drugs and (2) recommended suspension for two years of his license to practice medicine in this State. An order directing such suspension of that license was accordingly issued by the State Commissioner of Education on

behalf of the State Education Department and the Board of Regents.

This proceeding to review that disciplinary action was instituted by the petitioner under article 78 of the Civil Practice Act and conformably to section 1296 of that article was in due course transferred to the Appellate Division where the determination of the Board of Regents was annulled on the law. Dissatisfied with that declaration of nullity the Board of Regents and the Commissioner of Education then brought the case here by an appeal which we now undertake to decide.

The applicable statute is paragraph (c) of subdivision 2 of section 6514 of the Education Law of this State. It is thereby provided: " The license or registration of a practitioner of medicine may be  *  *  *  suspended  *  *  *  upon decision after due hearing in any of the following cases:  *  *  ·*  (c) That a physician is an habitual drunkard, or is or has been addicted to the use of morphine, cocaine or other drugs having similar effect, or has become insane ". The construction that should be put upon the word " addicted " as thus employed by the New York Legislature is the single question that is here presented.

" Addicted " is not a word of art. It is not a technical word at all. According to the lexicographers, it means strongly disposed to some taste or practice or habituated, especially to drugs. But resort to dictionaries in situations like that now before us has for some reason been judicially deprecated at times and so we go on to the case law where occasions for defining the word " addicted " have often occurred in the course of controversies respecting applications for insurance. Thus in *Aetna Life Ins. Co.* v. *Davey* (123 U. S. 739, 742) the court said: " The inquiry as to whether the insured had ever been addicted to the excessive or intemperate use of alcoholic stimulants, and, whether, at the time of the application, he used alcoholic stimulants ' often or daily ' was, in effect, an inquiry as to his habit in that regard; not whether he used such stimulants or opium at all, but whether he used any of them habitually. If he was addicted to the excessive use of them, he was habitually intemperate; and to use them often or daily is, according to the ordinary acceptation of those words, to use them habitually." Law writers ascribe to " addicted " the same significance. Mr. Apple-

man says: " After all, a man is either temperate or intemperate, and in common parlance, a man is not intemperate unless he frequently drinks to excess. Even more elastic is the word ' addicted '. This, also in layman's language, means a slave to ". (1 Appleman, Insurance Law and Practice, § 281, pp. 304–305. So, 4 Couch, Cyclopedia of Insurance Law, § 884a, p. 2909.)

For years this petitioner used large quantities of morphine, cocaine and demerol, as he confesses or does not deny. During the period 1945–1946, he procured from six doctors prescriptions for (a) 3,832 one-quarter grain and 12 one-half grain morphine sulphate hypodermic tablets; (b) 96 one-quarter grain, 896 one-half grain and 1,588 one grain codeine hypodermic tablets; (c) 8 pantopon tablets; (d) 3,032 cc of demerol solution. The petitioner consumed those drugs, as he concedes. More than that: In the period 1941–1946 he used narcotics in amounts which at the hearing herein were characterized by him as " heroic " and by one of his physicians as " excessive ", although during that time he suffered acute physical pain.

On the undisputed evidence, then, the suspension of the medical license of the petitioner was fully warranted — unless the word " addicted " in the above text of our Education Law is not to be construed in its common and popular meaning.

As read by the Appellate Division that text does not sanction suspension of a medical license except upon proof of " some deleterious effect or a deterioration " in a practitioner " rendering it unsafe or improper for him to practice his profession " (275 App. Div. 5, 8). Since there was no proof to that effect in this record, it followed that the discipline here visited upon the petitioner was unauthorized, and so the Appellate Division held.

We cannot agree to that decision. It seems to us to be an undue departure from the elementary rule which requires judges to give to nontechnical words in a statute their ordinary meaning. The Appellate Division read into the above text of our State Education Law that part of the United States Public Health and Welfare Law which declares an " addict " to be any person who is or has been so far addicted to the use of habit-forming narcotic drugs " as to have lost the power of self-control with reference to his addiction ". (See U. S. Code, tit. 42, § 201, subd. [k].) This technique of the court was, we think,

a misapplication of the rule as to the exposition of one statute by the language of another. (Cf. 27 Halsbury's Laws of England [1st ed.], pp. 138–140.) In the relevant New York legislation, the word '' addicted '' has had a place for more than four decades. The Federal Public Health and Welfare Law became law in 1944. Hence by an attempt here to fasten Federal legislation to a State statute the court imposed upon the New York statutory use of the word '' addicted '' a meaning which it certainly did not have for a generation or more theretofore. It is a strong thing so to read into a statute words which are not there and, in the absence of a clear necessity, it is a wrong thing to do (see Maxwell on Interpretation of Statutes [9th ed.], p. 14). Nor would such a construction be beneficial in this instance. For as a matter of practical good sense, a physician who daily stands in need of inordinate supplies of narcotic drugs ought not to be allowed to practice his profession, no matter how blameless he may be and irrespective the extent to which he may exhibit any debasement.

In short, we see no ground either in the history of the above provision of our Education Law or in its context for reading it otherwise than in its natural and usual sense.

The order of the Appellate Division should be reversed and the determination of the Board of Regents and the order of the Commissioner of Education reinstated, with costs in this court and in the Appellate Division.

LEWIS, CONWAY, DESMOND, DYE, FULD and BROMLEY, JJ., concur.

Order reversed, etc.