ARTHUR WAGNER, Respondent, *v.* PANAMA RAILROAD Co., Appellant.

Argued April 12, 1949; decided July 19, 1949.

*Thomas J. Maginnis, Arthur P. Loughran* and *Edwin Phillips Kohl* for appellant. I. The Panama Railroad Company is a " Federal agency " within the meaning of the Federal Tort Claims Act. (*Wickman* v. *Inland Waterways Corp.*, 78 F. Supp. 284; *New York ex rel. Rogers* v. *Graves*, 299 U. S. 401.) II. The order should be reversed and the complaint dismissed under subdivision 9 of rule 107 of the Rules of Civil Practice because the cause of action accrued against the United States and not against defendant. (*Wickman* v. *Inland Waterways Corp.*, 78 F. Supp. 284.) III. The order should be reversed and the complaint dismissed under subdivision 2 of rule 107 of the Rules of Civil Practice for lack of jurisdiction of the subject matter.

*Louis R. Harolds* and *William L. Standard* for respondent. I. Prior to the adoption of the Federal Tort Claims Act, seamen had a well-established and recognized remedy under specific statutes and laws relating to the liability of this defendant in seamen injury suits. (*Panama R. R. Co.* v. *Johnson*, 264 U. S. 375; *Tammis* v. *Panama R. R. Co.*, 202 App. Div. 226; *Flynn* v. *Panama R. R. Co.*, 121 Misc. 239; *Mahnich* v. *Southern S. S. Co.*, 321 U. S. 96; *Rey* v. *Colonial Navigation Co.*, 116 F. 2d 580; *Seas Shipping Co.* v. *Sieracki*, 328 U. S. 878; *State of Maryland*, 85 F. 2d 944; *German* v. *Carnegie Illinois Steel Corp.*, 156 F. 2d 937; *O'Donnell* v. *Great Lakes Dredge Co.*, 318 U. S. 36.) II. The Federal Tort Claims Act should not be construed to repeal settled rights by implication. (*Sweet* v. *United States*, 71 F. Supp. 863; *State of Maryland* v. *United States*, 165 F. 2d 869; *Jefferson* v. *United States*, 77 F. Supp. 706; *Van Wil* v. *United States*, 77 F. Supp. 22.) III. The language of the Federal Tort Claims Act itself shows that it was not intended to apply to seamen's injury cases, where existing law had already provided adequate remedies to meet the peculiar needs of the industry. (*Panama R. R. Co.* v. *Johnson*, 264 U. S. 375; *Long* v. *United States*, 78 F. Supp. 35; *Ekberg* v. *United States*, 76 F. Supp. 99.) IV. Congress may not be presumed to have intended to alter seamen's long and well-established rights, by implication. (*Hust* v. *Moore-McCormack Lines*, 328 U. S. 707; *Brady* v. *Roosevelt S. S.*

*Co.*, 317 U. S. 575; *Panama R. R. Co.* v. *Minnix*, 282 F. 47; *Sloan Shipyards Corp.* v. *United States Fleet Corp.*, 258 U. S. 549.)

LEWIS, J. Upon this appeal, taken by permission of the Appellate Division from an order of that court unanimously affirming an order of Special Term, the scope of our inquiry is defined by the following certified question: '' Was the order of Special Term proper in denying defendant's motion to dismiss the complaint herein pursuant to Rule 107, subdivisions 2 and 9 of the Rules of Civil Practice? ''

The defendant asserts the legal insufficiency of the complaint upon the grounds that, under provisions of the Federal Tort Claims Act (Aug. 2, 1946, ch. 753, § 401 *et seq.*, 60 U. S. Stat. 842 *et seq.*), (1) the cause of action alleged did not accrue against the defendant, and (2) such statute withdraws from the Supreme Court of this State jurisdiction of the subject of the action.

From facts alleged in the complaint it appears that the defendant, Panama Railroad Co., is the owner and operator of *S. S. Cristobal;* that on March 29, 1947, while plaintiff was in the course of his employment as a merchant seaman aboard that vessel, he sustained personal injuries when he was struck by the door of an icebox; that the injuries so sustained were not due to plaintiff's fault but were caused by *negligence* of the defendant and *unseaworthiness* of the vessel, and that plaintiff's injuries became aggravated because of the defendant's failure to provide plaintiff with *maintenance and cure.* For the injuries sustained plaintiff demands that the defendant respond to him in damages, including wages, maintenance and cure.

From further facts brought into the record by an affidavit submitted in support of the defendant's motion to dismiss the complaint (rule 107 *id.*, subds. 2, 9), it appears that in the year 1905, in connection with the acquisition of the Panama Canal Zone and to facilitate development of the Panama Canal, the United States Government purchased all the capital stock of the defendant corporation, and has ever since held that stock; that by Executive Order dated May 9, 1904, the President of the United States directed that the defendant be made an adjunct of the Panama Canal; that subsequent thereto the Federal Government has utilized and maintained the defendant company not only to operate a railroad across the Isthmus of Panama but

also to operate three steamships — of which *S.S. Cristobal* is one — which ply between New York and Cristobal, Canal Zone, and which, with incidental commissaries, harbor terminals, and related facilities, provide transportation for Government freight, civilian employees of the Panama Canal and the Panama Railroad Co. and their families as well as the families of army and navy personnel and employees of the United States Government stationed in the Canal Zone. The affidavit submitted by the defendant states further that "When the accident referred to in the complaint took place, the S.S. ' Cristobal ' was engaged in a scheduled trip on her regular run."

Upon those facts the defendant contends that, as the owner and operator of the vessel upon which plaintiff was injured, it was then acting as an instrumentality or agency of the United States. Accordingly, it argues, the present action will not lie against the defendant because — contrary to provisions of the Federal Tort Claims Act (*supra*) — the Panama Railroad Co. (rather than the United States) is named as defendant herein, and the action is brought in the Supreme Court of New York (rather than the United States District Court for the district where the plaintiff is resident).

The sections of the Federal Tort Claims Act (*supra*) which the defendant invokes, insofar as relevant to the question before us, are as follows:

" Sec. 410. (a) Subject to the provisions of this title, the United States district court for the district wherein the plaintiff is resident or wherein the act or omission complained of occurred, including the United States district courts for the Territories and possessions of the United States, sitting without a jury, shall have exclusive jurisdiction to hear, determine, and render judgment on any claim against the United States, for money only, accruing on and after January 1, 1945, on account of damage to or loss of property or on account of personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office. or employment, under circumstances where the United States, if a private person, would. be liable to the claimant for such damage, loss, injury, or death in accordance with the law of the place where the act or omission occurred."

" Sec. 423. From and after the date of enactment of this Act, the authority of any Federal agency to sue and be sued in its own name shall not be construed to authorize suits against such Federal agency on claims which are cognizable under part 3 of this title, and the remedies provided by this title in such cases shall be exclusive.''

It should be further noted that, as originally enacted and as applicable to the case at bar, section 420 *id.* established a *one-year* Statute of Limitation for all claims against the United States cognizable under that statute.

If the position taken by the defendant in this case is to prevail, it calls for a ruling that by the enactment of the Federal Tort Claims Act in 1946, Congress intended not only to subtract in large measure from substantial rights which it had accorded to seamen by the enactment in 1915 of the Jones Act (U. S. Code. tit. 46, § 688) but also to withdraw from seamen fundamental rights which courts of admiralty have jealously guarded in their administration of maritime law. We are not disposed so to rule.

In reaching that conclusion we have been influenced by the historic background of general maritime law against which we have viewed the problem presented. That background brings out in bold relief the fact that '' *  *  * maritime law by inveterate tradition has made the ordinary seaman a member of a favored class. He is a ' ward of the admiralty,' often ignorant and helpless, and so in need of protection against himself as well as others.'' (*Warner* v. *Goltra,* 293 U. S. 155, 162; and see *Robertson* v. *Baldwin,* 165 U. S. 275, 282–283, 287; *The Arizona* v. *Anelich,* 298 U. S. 110, 121–123; *Calmar S.S. Corp.* v. *Taylor,* 303 U. S. 525, 527–529; *Socony-Vacuum Oil Co.* v. *Smith,* 305 U. S. 424, 429–432; *Aguilar* v. *Standard Oil Co.,* 318 U. S. 724, 727.) Long ago Mr. Justice Story had occasion to state the basis for that traditional wardship under which, as a protective measure, admiralty has placed seamen: '' Seamen are in some sort co-adventurers upon the voyage; and lose their wages upon casualties, which do not affect artisans at home. They share the fate of the ship in cases of shipwreck and capture. They are liable to different rules of discipline and sufferings from landsmen. The policy of the maritime law, for great, and wise, and benevolent purposes, has built up peculiar rights, privileges,

duties, and liabilities in the sea-service, which do not belong to home pursuits." (*Reed* v. *Canfield,* Fed. Cas. No. 11,641, p. 428, 1 Sumn. 195, 199.)

It thus came about that for many years antedating 1915, it was the settled law in admiralty that, in case a seaman became ill or sustained injuries in the service of his ship, the vessel and her owner were liable to the extent of his maintenance and cure, and for his wages, at least so long as the voyage continued; that the vessel and her owner were liable to an indemnity for injuries suffered by a seaman in consequence of the unseaworthiness of the ship, or a failure to supply and keep in order the proper appliances appurtenant to the vessel; that members of the crew were fellow servants and could not recover for injuries sustained through the negligence of another crew member beyond the expense of their maintenance and cure; and that a seaman could not recover an indemnity for the negligence of the master of the ship, or any member of the crew, but was entitled to maintenance and cure, whether his injuries were caused by negligence or accident. (*The Osceola,* 189 U. S. 158, 175.)

It was not until 1915 that Congress — knowing " * * * that men employed upon a ship were without a remedy in damages for negligence beyond their cure and maintenance, unless the injury was a consequence of the unseaworthiness of the ship or a defect in her equipment " (*Warner* v. *Goltra,* 293 U. S. 155, 158, *supra*) — enacted legislation commonly known as the Jones Act (March 4, 1915, ch. 153, § 20, 38 U. S. Stat. 1185; June 5, 1920, ch. 250, § 33, 41 U. S. Stat. 1007; U. S. Code, tit. 46, § 688).

That statute provides in part as follows: " Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply ".

By this enactment Congress thus chose, by reference in the text, to make applicable to seamen injured in the course of their employment, provisions of the Federal Employers' Liability Act (U. S. Code, tit. 45, §§ 51–60) which statute gives to railroad employees a right, if suit is commenced within *three*

*years* from its accrual (§ 56 *id.*), to institute an action of which courts of the United States and courts of the several States shall have *concurrent* jurisdiction (§ 56 *id.*), to recover for injuries resulting from the negligence of their employer, its agents or employees. (*De Zon* v. *American President Lines,* 318 U. S. 660, 665; *Panama R.R. Co.* v. *Johnson,* 264 U. S. 375, 388–389; *The Arizona* v. *Anelich, supra,* pp. 118–119; *O'Donnell* v. *Great Lakes Dredge & Dock Co.,* 318 U. S. 36, 38–39.)

The legislation comprising the Jones Act " * * * was remedial, for the benefit and protection of seamen who are peculiarly the wards of admiralty. Its purpose was to enlarge that protection, not to narrow it." (*The Arizona* v. *Anelich, supra,* p. 123.) To accomplish that end the statute has been consistently the subject of liberal construction. (*Chelentis* v. *Luckenbach S. S. Co.,* 247 U. S. 372, 380–381; *Jamison* v. *Encarnacion,* 281 U. S. 635, 639; *Alpha S. S. Corp.* v. *Cain,* 281 U. S. 642; *Cortes* v. *Baltimore Insular Line,* 287 U. S. 367, 375; *Warner* v. *Goltra, supra,* pp. 156–157, 162; *Garrett* v. *Moore-McCormack Co.,* 317 U. S. 239, 248.)

In its brief filed with us on this appeal the defendant concedes that prior to the enactment in 1946 of the Federal Tort Claims Act (*supra*) the defendant was subject to the provisions of the Jones Act, and that defendant is expressly excepted from the provisions of the Suits in Admiralty Act (U. S. Code, tit. 46, § 741). The defendant argues, however, that by providing in section 423 of the Federal Tort Claims Act (quoted *supra*) that the remedies prescribed by that act shall be exclusive, Congress declared its intention to prohibit an action — such as the case at hand — brought in a State court by a seaman injured in the course of his employment. The defendant points to the fact that the plaintiff is not left without a remedy because, as an injured employee of the defendant — a Federal agency — the Federal Tort Claims Act affords him the right to bring suit in a Federal District Court against the United States under conditions therein prescribed.

Disagreeing, as we do, with the defendant's position, we note first the difference in certain fundamental rights accorded to a suitor under the two statutes: by the Jones Act — the earlier statute — Congress has given to an injured seaman the right, " at his election ", to institute against his employer an action

in negligence for damages *with the right of a trial by jury* (U. S. Code, tit. 46, § 688) of which action both Federal and State courts have *concurrent* jurisdiction and as to which the statute of limitations is fixed at *three years* (U. S. Code, tit. 45, § 56); by the Federal Tort Claims Act — the later statute — the Federal courts, " *sitting without a jury* " (emphasis supplied) are given exclusive jurisdiction of any action brought under the act, and the statute of limitations (under the original act here invoked by the defendant) is *one year.* (§§ 410, 420, 423 *id.*)

In the caption of the 1915 statute which contained the original enactment of the Jones Act (ch. 153, § 20, 38 U. S. Stat., pp. 1185, 1164) Congress declared its intention thereby to be " to promote the welfare of American seamen ". (*Panama R. R. Co.* v. *Johnson,* 264 U. S. 375, 389, *supra.*) We find nothing in that enactment nor in its amendment in 1920 (ch. 250, § 33, 41 U. S. Stat. 1007; U. S. Code, tit. 46, § 688) to indicate a lessening of concern by Congress for the welfare of a seaman injured in the course of his employment; nor was there a withdrawal of those protective measures which had long been accorded him. Indeed, as we have seen, there is distinguished authority for the statement that the purpose of the Jones Act " *     *     *     was to enlarge that protection, not to narrow it.*" (*The Arizona* v. *Anelich, supra,* p. 123.)

Reference has been made to the traditional care which courts in admiralty have consistently exerted for the welfare of seamen injured in the course of their employment. We also know that the enactment of the Jones Act — which gave an injured seaman the right within three years to bring suit against his employer in either a State or Federal court where the right of trial by jury will be accorded to him — " *     *     *     was the culmination of a long struggle by seamen to secure more adequate relief in case of injury or death, incurred in the course of employment, than had been afforded by preexisting law.*" (*Hust* v. *Moore-McCormack Lines,* 328 U. S. 707, 715.)

In view of the solicitude for an injured seaman's welfare shown by courts of admiralty and by Congress we do not think — as claimed by the defendant — that it was the intent of Congress, by enacting the Federal Tort Claims Act, to forbid an injured seaman from bringing suit against his employer unless

within *one year* his action is instituted in a Federal District Court where he will be deprived of the right of trial by jury. We may not lightly assume an intention by Congress to depart so abruptly from a policy which through a long period of years has become deeply imbedded in maritime law and has been consistently administered by the courts of this land. Our conclusion is that if, by enacting the Federal Tort Claims Act in 1946, Congress had intended to make such drastic subtractions from those fundamental rights it had granted to injured seamen in 1920 by an amendment to the Jones Act, it would have expressed such a purpose in precise words which left no doubt as to that intention. (*Brady* v. *Roosevelt S.S. Co.*, 317 U. S. 575, 581.)

The order should be affirmed, with costs. The question certified by the Appellate Division is answered in the affirmative.

FULD, J. (concurring). Desirable as may be the result achieved by the court's decision, it is accomplished, I suggest, by rewriting the statute passed by Congress. I deem cardinal the rule, laid down by the cases, that '' in the construction * * * of statutes * * * the intent of the framers * * * is to be sought first of all, in the words and language employed, and if the words are free from ambiguity and doubt, and express plainly, clearly and distinctly, the sense of the framers of the instrument, there is no occasion to resort to other means of interpretation.'' (*McCluskey* v. *Cromwell,* 11 N. Y. 593, 601; see, also, *Matter of Palmer* v. *Spaulding,* also decided today, 299 N. Y. 368.) Consonant with that principle, it is settled that we may not read exceptions into a plainly worded statute which is exclusive in terms. (See *People* v. *Rathbone,* 145 N. Y. 434; *People* v. *Long Island R. R. Co.,* 194 N. Y. 130; *Matter of Tishman* v. *Sprague,* 293 N. Y. 42, 50.)

It is true that, if we find the Federal Tort Claims Act applicable to this case, the plaintiff, a merchant seaman, will lose his right to sue in the State courts. And it is likewise true that the underlying design was to give many persons injured by the negligent or wrongful act or omission of Federal employees a cause of action which previously they did not possess. It is easy to conjecture that Congress could not have intended to circumscribe the rights of seamen employed on ships of the Government

or a governmental agency, it is easy to conjecture that Congress meant to permit this plaintiff to sue in the State courts — but, the question is, what did Congress say about it? In short, did Congress except from the operation of the Act a claim for which a remedy was provided by the Jones Act (U. S. Code, tit. 46, § 688)? If the statute is to be taken as meaning what it says, the conclusion is clear that Congress gave thought to the matter and decided to include within the coverage of the Federal Tort Claims Act all claims against the Government based upon the negligence of a Government employee *excepting* only those set forth in section 421.

Aware that certain types of claims could be prosecuted under many existing Federal statutes, Congress listed twelve groups of claims and, in section 421, explicitly excepted them from the provisions of the Federal Tort Claims Act. Thus, Congress announced in so many words that " The provisions of this title shall not apply to  *  *  *  (d) Any claim for which a remedy is provided by the Act of March 9, 1920 (U. S. C., title 46, secs. 741–752, inclusive), or the Act of March 3, 1925 (U. S. C., title 46, secs. 781–790, inclusive), relating to claims or suits in admiralty against the United States ". However, it did not include or mention the Jones Act. That statute is found in United States Code, title 46, section 688, and its omission from the listing of the twelve excepted groups of claims is the more significant, since the two statutes referred to in subdivision (d) have to do with admiralty and maritime claims against the United States and the claims mentioned in subdivision (g) relate to those " arising from injury to vessels, or to the cargo, crew, or passengers of vessels, while passing through the locks of the Panama Canal or while in Canal Zone waters."

Perhaps, Congress was guilty of an oversight in not similarly mentioning " any claim for which a remedy is provided by the Jones Act ", but I do not see how we may say so. Though I would read a statute such as the one before us liberally and in favor of persons in plaintiff's class, I see no justification for rewriting it by inserting an exception which — for all we know — Congress may have designedly and deliberately omitted.

However, an affirmance is dictated by another consideration.

The motion to dismiss is directed against the complaint in its entirety. Here, the claim based upon negligence is only one of

three causes of action stated in the complaint. The other two causes are for unseaworthiness and for maintenance and cure. In my opinion, those causes of action are good and valid, for I do not believe that the claims upon which they are based are within the reach of the Federal Tort Claims Act. If that is so, then the motion to dismiss the complaint must, in any event, be denied. (See, e.g., *Advance Music Corp.* v. *American Tobacco Co.*, 296 N. Y. 79; *Laster* v. *Solotaroff*, 273 App. Div. 32, 33.)

Accordingly, I would affirm on the ground that the complaint states good causes of action regardless of the validity or invalidity of that cause which is based upon the claim of negligence.

CONWAY, DESMOND and DYE, JJ., concur with LEWIS, J.; FULD, J., concurs in separate opinion in which LOUGHRAN, Ch. J., and BROMLEY, J., concur.

Order affirmed, etc.