In the Matter of CRISTINA DE BOURBON PATIÑO, Respondent, against ANTENOR PATIÑO, Judgment Debtor. PEERLESS INSURANCE COMPANY, Appellant.

First Department, May 12, 1959.

*Alfred A. Marra* of counsel (*John G. Turnbull* and *Daniel J. Loughlin* with him on the brief; *Turnbull & Bergh,* attorneys), for appellant.

*Emanuel Lewis Greene* of counsel (*William Russell Bogert* and *Richard Heller* with him on the brief; *Patterson, Eagle, Greenough & Day,* attorneys), for respondent.

STEVENS, J.  In this consolidated appeal the surety appellant, herein called surety, appeals from (1) an order made and entered October 1, 1958, which directed that bail of $50,000, previously declared forfeited on September 30, 1958, be paid by the surety to the judgment creditor, herein called creditor; and (2) an order entered January 23, 1959, denying surety's motion to vacate an ex parte order amending the undertaking.

July 15, 1949, creditor obtained a judgment against Antenor Patino, the judgment debtor, herein called debtor.  July 30, 1957, a warrant was issued for debtor's arrest.  The warrant as allowed by Justice SPECTOR directed that upon apprehension of the debtor he be brought before Justice SPECTOR or any justice presiding at Special Term, Part II; further, if the apprehension occur between 2:00 P.M. and 10:00 A.M. of the day following, or at any time when the court was not in session " the Judgment Debtor shall be released under $50,000 bail."

The debtor was apprehended September 26, 1958, about 5:25 P.M., thereafter taken before the Justice who allowed the warrant, and released on bail after an undertaking was executed in the amount of $50,000.  By the terms of the bond the obligee was the " People of the State of New York " and it was conditioned upon the appearance of the debtor in Special Term, Part II, on September 29, 1958.

On September 29, 1958, the debtor defaulted in appearing, an application was made for forfeiture on the bond, and the matter adjourned to September 30, 1958, at which time the bail was declared forfeited.  The attorney for the debtor pointed out that he was " not in a position to oppose the forfeiture of the bond to the judgment creditor."  It was directed that notice be given to the surety and all parties appear October 1, 1958.

On October 1, the creditor appeared personally with her attorney and the other parties appeared by counsel.  At that

time the attention of the Justice presiding was directed to the named obligee on the undertaking and he was informed correctly that the Justice who approved the undertaking intended that the creditor be named as obligee. The attorney for the debtor expressed a similar view. Over objection of the surety an order was signed directing payment of $50,000 to the creditor, and providing that upon such payment the surety be exonerated. The surety appeals from that order.

On October 2, 1958, the Justice who had approved the undertaking, on his own motion, by ex parte order, amended the bond or undertaking *nunc pro tunc* to name the creditor as obligee. A motion to vacate such order was denied by order dated January 23, 1959, and the appeal from that order is also before us.

It should be pointed out that a letter dated December 23, 1958, from the Attorney-General, addressed to the surety, asserted that the Attorney-General after inquiry is satisfied that the People of the State of New York have no interest in the bond.

On this appeal, among the several grounds advanced, the surety argues that bail here may be proceeded against only by an action; that the undertaking was a nullity; that the order of October 1, was contrary to the express terms of the bond; that the bond could not have been corrected without a proceeding to reform it and therefore the ex parte order should have been vacated; that the court was without jurisdiction and there was no consent by the debtor's attorneys.

The respondent characterizes the appeal as frivolous, asserts that no plenary suit is necessary and that the court had inherent power to correct what respondent terms an obvious error in the bond.

Attention is directed to two sections of the Civil Practice Act dealing with arrest. One refers to a warrant of arrest issued in proceedings supplementary to judgment (§ 775, subd. 3); the other to the issuance of an order of arrest in the exercise of the equitable jurisdiction of the court (§ 827). The warrant of arrest here falls within the provisions of subdivision 3 of section 775.

Under the provisions of section 776, the court may require an undertaking of the debtor after the debtor is brought before him when it '' appears to the satisfaction of the judge, from the debtor's examination or other proof, that there is danger that he will leave the state or conceal himself ''. The surety argues since there was no hearing or examination the subject undertaking is a nullity. This argument is totally without

merit. The Justice who approved the undertaking was the Justice who allowed the warrant originally. The warrant which was before the court recited, and it is fair to assume it was on such basis that the warrant was issued and allowed, " that the Judgment Debtor, Antenor Patino, will be coming into the State of New York, and that when he does come into this jurisdiction he will probably leave the State of New York within a very short time, and that he has and at such time will have concealed property in his possession or under his control ", etc. It was not requisite that the Justice before whom the principal appeared discard knowledge of matters to which his attention had been directed previously. There is nothing to indicate that the " other proof " was not up to the standard set by the statute, viz.: " to the satisfaction of the judge."

The obligation of the bond was a contract to assure the appearance of the debtor at the time and place provided for therein. In default of such appearance a sum specified would be paid to a named obligee. There is no evidence that there was a cash deposit of bail, so the provisions of section 859 of the Civil Practice Act are not applicable.

Where, as here, there was a failure to comply with the undertaking the bail may be proceeded against by a party interested or for whose benefit it was made by an action and not otherwise (Civ. Prac. Act, §§ 159, 160). It is clear that a plenary action is required and it is not sufficient that notice be given a surety after forfeiture of the bond and preliminary to the signing of the order. (*Steinbock* v. *Evans,* 122 N. Y. 551; *Talbot* v. *New Amsterdam Cas. Co.,* 237 N. Y. 245; 72 C. J. S., Principal and Surety, §§ 249, 250 *et seq.*; cf. *Chancer* v. *Chancer,* 308 N. Y. 204; *Wintner* v. *National Sur. Co.,* 120 Misc. 613; *Russ* v. *Concord Cas. & Sur. Co.,* 147 Misc. 683; *Slagle* v. *Burden,* 239 App. Div. 104, affd. 264 N. Y. 548.)

May a court of its own motion under the facts present amend an undertaking ex parte *nunc pro tunc?*

Section 105 of the Civil Practice Act provides " At any stage of any action, special proceeding or appeal, a mistake, omission, irregularity or defect may be corrected or supplied, as the case may be, in the discretion of the court, with or without terms, or, if a substantial right of any party shall not be thereby prejudiced, such mistake, omission, irregularity or defect must be disregarded." It is expressly subject however to the limitation that the opponent be not substantially prejudiced thereby and is not applicable here.

In theory of law the debtor, the principal here, is in custody of his bailor (*Toles* v. *Adee,* 84 N. Y. 222) who had a duty to

produce him when his presence was essential as called for by the undertaking. The surety agreed with its principal, for a consideration, that it would assume liability for the principal's appearance or, if the principal did not obey the direction of the court, the surety would pay a fixed sum to a named obligee (Civ. Prac. Act, § 148). To unilaterally create a different obligee is to alter substantially the terms of the contract obligation and, in effect, make a different contract. This the court may not do.

"A contractual obligation may not be altered without the consent of the person who had assumed the obligation." (*Becker* v. *Faber*, 280 N. Y. 146, 148.) It is no answer that the Attorney-General by letter disclaims interest in the bond. Such disclaimer has neither the persuasiveness nor the binding effect of a judicial proceeding.

The view expressed is buttressed by the provisions of the statute, article 17, applicable to bonds or undertakings in civil actions or special proceedings (Civ. Prac. Act, § 148 *et seq.*). A change of parties may be effected or an amendment made on the application of the persons who executed it. (Civ. Prac. Act, §§ 150, 148.) Here the change was over the strenuous objections of the surety. It was a nullity for the language of the statute is exclusive.

The statute affords methods by which the relief sought may be obtained, or the parties may, if they wish, seek to reform the contract.

The principal's burden is not more onerous in light of the view expressed here. No change was attempted or effected by act of the parties which altered the obligation of the surety. The undertaking therefore is not discharged.

The order granting the creditor's motion to direct payment by the surety should be reversed on the law, and the motion denied, with costs to the appellant.

The order denying the surety's motion to vacate the ex parte order amending the undertaking should be reversed on the law, and the motion granted, with costs to the appellant.

BOTEIN, P. J., BREITEL, RABIN and M. M. FRANK, JJ., concur.

Order of October 1, 1958 unanimously reversed on the law, with $10 costs and disbursements to the appellant, and the motion denied, with $10 costs.

Order of January 23, 1959 unanimously reversed on the law, with $10 costs and disbursements to the appellant, and the motion granted, with $10 costs.