*212 OPINION OF THE COURT
William Kapelman, J.
The issue raised by this motion to vacate a judgment of forfeiture of bail is one of first impression in this State: Can a surety obligor on a consolidated bail bond terminate its liability prior to the conclusion of the criminal proceeding by including a clause in the bond which expressly limits the effectiveness of the bond to a specific period of time?
On October 14, 1976, the principal was arrested and charged with the crimes of grand larceny in the first degree, criminal possession of stolen property in the third degree, and criminal impersonation for allegedly extorting $3,600 from a 78-year-old man. Bail was fixed on October 15, 1976 at arraignment in Criminal Court, Bronx County, in the amount of $1,000.
On October 20, 1976, Stuyvesant Insurance Company posted bail in criminal court in the form of a consolidated bail bond in the sum of $1,000. The bond, executed by the surety and approved by the court, stated in part: "The Stuyvesant Insurance Company, 877 Brook Avenue, Bronx, New York, Surety, hereby undertake [sic] jointly and severally that the above-mentioned defendant (1) Shall appear before the Criminal Court Judge presiding at the Criminal Court of the City of New York, County of Bronx, Part IE each and every day to which said examination may be adjourned; That this bond shall become void one year from date, and (2) further, that if an order be made that said defendant be held to answer a charge of 155.40, 165.40, 190.25-3 or any other crime, the above named defendant shall appear and answer the charge, in whatever Court it may be prosecuted; and shall at all times render self amenable to the orders of and process of the Court; and if convicted shall appear for judgment, and render self in execution thereof; however, this bond does not include time to pay fines; and does not include Appeals and does not include superseding Indictments. If the above named defendant fail to perform either or any of these conditions, that we will pay People of the State of New York the sum of ten hundred dollars ($1000).” (Emphasis added.)
On October 27, 1976, the Grand Jury of Bronx County returned a 26 count indictment against the principal charging him with related crimes for which he had been arrested. The case was therefore transferred from Criminal Court to Supreme Court, Bronx County. The principal appeared in Supreme Court when required throughout 1977, and was at *213 .liberty at all times during the proceedings on the bond posted by the surety. On April 6, 1978, the principal pleaded guilty to the crime of grand larceny in the third degree in full satisfaction of the entire indictment and another pending indictment.
On August 11, 1978, the date set for sentencing, the principal failed to appear in Supreme Court and the court entered such facts in the minutes. A bench warrant was issued, and the bail bond was forfeited. On August 29, 1978, a judgment against the surety was entered by the office of the Clerk, Bronx County. The principal returned to Supreme Court on October 25, 1978, and was sentenced to one-year imprisonment.
The movant, Stuyvesant Insurance Company, argues that at the time the principal failed to appear in court the bail bond had already expired by its terms. Thus, the movant argues, it was no longer the surety and is not liable on the bond as a matter of law. The motion before this court is therefore one to vacate the judgment of forfeiture rather than one for remission of forfeiture pursuant to CPL 540.30, since the motion is a direct challenge to the right of the court to enforce the forfeiture of a void bond (see People v Wirtschafter, 305 NY 515, 519; People v Maldonado, 49 Misc 2d 641, 642).
The People contend that notwithstanding the express limitation contained in the bond (1) the surety must surrender the principal to the court in order to terminate its liability prior to the conclusion of the criminal proceeding; (2) the surety is estopped from raising the contractual limitation in the bond because it wrongfully caused the People to rely on the bail bond by tacitly allowing the principal to remain at liberty after the period of limitation expired; and (3) the clause in the bond limiting its effectiveness violates provisions of the Insurance Law which set permissible fees for bail bonds. The City of New York, appearing as amicus curiae, asserts that the bail bond was effective and binding on the surety when the principal failed to appear in court because the CPL does not permit a surety to limit its liability to a specific period of time.
In determining the scope of the surety’s liability, this court is mindful of the well-established principle of suretyship that a surety’s obligation is construed strictissimi juris (Matter of National Recreation Prods. [Gans], 46 AD2d 618, 619; People v Henry, 33 AD2d 1031, 1032). This rule, simply stated, is that the liability of a surety may not be altered or extended beyond the express contractual obligation without the surety’s *214 consent (Becker v Faber, 280 NY 146, 148; People v Henry, supra, p 1032). Of course, this principle does not create a unique rule of construction applicable to contracts of surety-ship. A contract of suretyship must be construed in the same way other written instruments are interpreted to determine the intention of the parties. The limitation of liability imposed by the principle of strictissimi juris is not upon the interpretation but in application of the contract after interpretation. Thus, after the intention of the parties is ascertained by the ordinary rules of construction, the principle of strictissimi juris applies, and the court must protect the surety against a liability which is not strictly within the terms of the contract (General Phoenix Corp. v Cabot, 300 NY 87, 92; Village of Argyle v Plunkett, 226 NY 306, 310; Richardson v County of Steuben, 226 NY 13, 19; Ulster County Sav. Inst, v Young, 161 NY 23, 30; Smith v Molleson, 148 NY 241, 246; Sachs v American Sur. Co. of N. Y, 72 App Div 60, 63, affd 177 NY 551; Gamble v Cuneo, 21 App Div 413, 414-415, affd 162 NY 634).
It is therefore clear that the ordinary rules of construction of contracts must guide this court in construing the provision of the bond at issue. If no ambiguity exists in the contract, or if the terms and language of the contract are not disputed, the meaning and legal effect of those terms are questions of law for the court (Sinkwich v Drew & Co., 9 AD2d 42, 45). But if the contract contains any ambiguous language, it should be construed in favor of the party who has accepted the contract and relied on a particular interpretation (United States Rubber Co. v Silverstein, 229 NY 168, 171; Jackson v Swart, 182 NY 373, 377; Smith v Molleson, supra, p 246; Sachs v American Sur. Co., supra, p 63; Gamble v Cuneo, supra, p 415). Thus, where a surety company has framed the terms of a bond by issuing a standard form, the bond should be interpreted liberally, and all ambiguities should be resolved in favor of the beneficiary of the bond (McClare v Massachusetts Bonding & Ins. Co., 266 NY 371, 377; People’s Bank of Hamburg, N. Y. v Gates, Inc., 232 App Div 328, 329).
The clause at issue in this bail bond, i.e., "That this bond shall become void one year from date,” appears on its face to be direct and unambiguous. One troubling aspect arises, however, from its position in the instrument within paragraph (1). At first blush, it would seem that this clause limiting liability to one year applies exclusively to the requirements of para *215 graph (1), i.e., that the principal will appear in criminal court for the duration of the preliminary hearing. Under such an interpretation, the liability of the surety would be limited only if the preliminary hearing iri criminal court were adjourned for longer than one year. Consequently, the requirements of paragraph (2), i.e., that the principal will appear in any court at all stages of the prosecution and will render himself in execution of judgment, would not be conditioned by the clause at issue.
However, such an interpretation would be both unreasonable and contrary to practical experience. The clause states that the bond shall become void in one year, not that the requirements of paragraph (1) need not be followed after one year. To interpret the clause in such a manner would ignore the plain meaning of the words. In addition, such an interpretation could not have been within the contemplation of the parties, for a criminal defendant has a right to a prompt preliminary hearing (CPL 180.10, subd 2), which should be completed at one session, and may be adjourned for only one day absent extraordinary circumstances (CPL 180.60, subd 10). Therefore, this court holds that, despite the inartful draftsmanship, the provision at issue means that the entire bond shall become void one year from the date of its execution. It is noteworthy that no party claims that the clause is ambiguous or that it should be interpreted in any other manner.
In light of this express limitation of liability in the bond, this court must determine whether the provision is statutorily authorized and, if so, the legal effect of the limitation in the case at bar. CPL 520.20 (subd 3) states: "A bail bond posted in the course of a criminal action is effective and binding upon the obligor or obligors until the imposition of sentence or other termination of the action, regardless of whether the action is dismissed in the local criminal court after an indictment on the same charge or charges by a superior court, and regardless of whether such action is partially conducted or prosecuted in a court or courts other than the one in which the action was pending when such bond was posted, unless prior to such termination such order of bail is vacated or revoked or the principal is surrendered, or unless the terms of such bond expressly limit its effectiveness to a lesser period. ” (Emphasis added.) This statute has never been construed by any court in New York. It is clear, however, that the Legislature intended to create a presumption that a bail bond posted *216 in a criminal action is a "consolidated bail bond”, i.e., effective not only in the court in which it was posted, but throughout all remaining proceedings in the action regardless of where those proceedings occur. While the predecessor Code of Criminal Procedure expressly authorized the use of consolidated bail bonds (Code Crim Pro, § 577-b) this statute arbitrarily deems all bail bonds as consolidated unless the instrument specifically states otherwise (see Denzer, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 520.20, p 30). The staff comment to the then proposed New York CPL 385.20 (subd 3), prepared by the Temporary Commission on Revision of the Penal Law and Criminal Code in 1967, states that the statute is designed to assure that a bail bond posted in a local criminal court is effective throughout all proceedings in the action "unless expressly limited by its terms” or judicially vacated. The comment continues: "It is legally proper, of course, to write a bond in such fashion that its effectiveness terminates once the case leaves the local criminal court”. The legislative history is silent, however, as to whether the terms of a bail bond may limit the effectiveness of the bond to a specific period of time.
The City of New York, as amicus curiae, contends that the words "a lesser period” in the statute must be read to mean "an earlier stage of the proceeding” and not a specific period of time. Thus, the city argues, the term of a bail bond may only limit its effectiveness to the occurrence of a definable event during the proceeding, such as the preliminary hearing in a local criminal court, the return of an indictment, a pretrial hearing, the trial, the verdict, the pronouncement of sentence, or the execution of sentence. In support of such a construction, the city asserts that since the purpose of the Legislature was to authorize consolidated bail bonds, effective at all stages of the criminal action, the specific exception contained in the statute merely permits a surety to expressly limit its liability to the occurrence of a particular stage during the action.
The difficulty with this analysis is that the express terms of the statute do not even suggest that the Legislature intended to restrict the exception to the specific one proposed by the city. If the Legislature had indeed intended the more specific exception, it would have enacted "an earlier stage of the proceeding” instead of "a lesser period”. It is elementary, of course, that courts cannot, through construction, enact an *217 intent the Legislature failed to express by reading into a statute words which are not there (Matter of Palmer v Spaulding, 299 NY 368, 372; Archer v Equitable Life Assur. Soc., 218 NY 18, 22; People v Gray, 41 AD2d 125, 126, affd 34 NY2d 903). Moreover, words of ordinary import should be given their plain, ordinary and usual meaning (Bright Homes v Wright, 8 NY2d 157, 162; Matter of Palmer v Spaulding, supra, p 371; People v Shakun, 251 NY 107, 114; Matter of Cortland-Clinton v New York State Dept. of Health, 59 AD2d 228, 231; Matter of Terino v Levitt, 44 AD2d 167, 169). This court can only conclude that the Legislature, by enacting the word "period”, intended its ordinary meaning, i.e., a portion of time of any length characterized by some recurring phenomenon or other cyclic occurrence. Thus, a calendar year or any other time interval, cyclic by nature, comes within the usual definition of the word "period”. In contrast, a particular stage of an ongoing proceeding does not, for a stage does not recur in cyclic fashion. Because a "court should not strain for an interpretation for which there is no express or even inferable foundation in the statute itself’ (People v Walsh, 44 NY2d 631, 636) the argument by the city must be rejected.
It is important to note that the interpretation given the statute by this court is in harmony with CPL 520.20 (subd 2, par [e]), which provides that a bail bond must state that the obligor undertakes that the principal will appear in the proceeding whenever required and will at all times render himself amenable to the orders and processes of the court. This provision would, of course, be fully applicable within the time period expressed in a bond limiting its effectiveness. The two provisions are therefore entirely compatible, and require that for whatever period a bail bond is effective, the obligor undertakes that the principal will appear at all times he is required and will obey the court’s orders.
The People’s argument that the surety must surrender the principal to the court in order to terminate its liability prior to the conclusion of the criminal proceeding is equally without merit. The People offer no support for this additional requirement. Moreover, the proposition is conclusively refuted by the language of the statute itself. The statute states that all bail bonds are deemed consolidated, effective until the termination of the criminal proceeding, "unless prior to such termination * * * the principal is surrendered, or unless the terms of such bond expressly limit its effectiveness to a lesser *218 period” (CPL 520.20, subd 3; emphasis added). The use by the Legislature of the disjunctive form clearly indicates that the surrender of the principal prior to the termination of the criminal proceeding is an alternative means of ending a surety’s liability, distinct from limiting the effectiveness of the bond by its express terms. Thus, the surrender of the principal by the surety is not a necessary condition in order to terminate liability prior to the conclusion of the criminal proceeding.
The People submit, as an alternative argument, that the surety is estopped from raising the contractual limitation in the bond because it wrongfully caused the People to rely on the bail bond by tacitly allowing the principal to remain at liberty after the period of limitation expired. Implicit in this contention is the proposition that the surety must notify the People or the court that its liability is about to end according to the terms of the bond. Having failed to do so, the People maintain, the surety cannot now rely on the contractual limitation. The case law in other contexts, however, clearly establishes that a surety is not responsible for the principal’s failure to appear in court after the court has erroneously permitted the principal to remain at liberty beyond the terms of the bail bond (see, e.g., People v Public Serv. Mut. Ins. Co., 49 Misc 2d 875; People v Public Serv. Mut. Ins. Co., 40 Misc 2d 341, principal released after judgment to pay fine; contra People v Public Serv. Mut. Ins. Co., 39 Misc 2d 488, where court construed bond to include execution of sentence; People v Bowles, 280 App Div 476; United States v Dinneen, 577 F2d 919, principal released after judgment pending appeal; contra United States v Catino, 562 F2d 1, where court construed bond to include time for appeal; cf. United States v Miller, 539 F2d 445; United States v Gonware, 415 F2d 82, where courts construed bonds to include brief periods after sentence; People v Henry, 33 AD2d 1031, supra, principal released after reversal on appeal; People v Maldonado, 49 Misc 2d 641, supra, principal released after surety exonerated by revocation of bail; People ex rel. Ritzenthaler v Higgins, 151 NY 570; People v Scott, 67 NY 585; People v McKenna, 62 App Div 327, principal released after date set for trial or hearing; contra People ex rel. Van Aken v Millham, 100 NY 273; People v Newman, 100 App Div 436, where courts construed bonds to include adjournments). Moreover, none of these cases hold that a surety must even object to the improper release of the *219 principal by the court in order to avoid liability. When the terms of the bail bond have been satisfied, the obligation of the surety terminates automatically by operation of law (People v Herman, 140 Misc 699, 700). Thus, the surety is not estopped from asserting the limits of its contractual liability against the State, which was responsible for the principal’s release. The State may not create a debt and collect money for itself by the erroneous acts of its officers (People v Wirtschafter, 305 NY 515, supra, no estoppel even where bail bond void at inception).
This court reaches the foregoing conclusions reluctantly, with full awareness that the rule of strictissimi juris "at times produces results which do not accord with our sense of what is fair or desirable” (Becker v Faber, 280 NY 146, 149, supra). The inequitable results which have been produced here, however, concern parties and contracts not before the court and are therefore irrelevant to the legal issues presented. Nevertheless, it is incumbent upon this court to expose the deplorable situation which has been created by Stuyvesant Insurance Company throughout the City of New York.
This court, in its capacity as Assistant Administrative Judge, Criminal Branch, First Judicial District, discovered that at the time this motion was filed, approximately 150 bail bonds containing the clause at issue were outstanding in Bronx County. In addition, approximately 45 bail bonds containing the clause had been executed over one year before. In sum, the Supreme Court, Bronx County, had been erroneously relying on bail bonds which were worthless. This situation has now been corrected in large measure and remaining outstanding bonds which contain the clause are being called for replacement or defendants are remanded. No new bonds containing the clause are being accepted within the discretion of the court.
From 1974 to 1979, Stuyvesant Insurance Company had written bail bonds in the City of New York which contained the one-year limitation of liability. Stuyvesant had always supplied the forms for consolidated bonds used in the Criminal Court of New York, all of which contained the clause. In Supreme Court, however, two forms were utilized as convenience required. The form provided by Stuyvesant contained the limitation while the form supplied by the District Attorney did not. In all other respects, the bonds were identical. The courts which ultimately approved the bail bonds were *220 never informed that some of the bonds contained the clause, nor that different bail bond forms were being used indiscriminately. More importantly, the indemnitors on the bail bonds were led to believe that they were contracting for bail bonds effective throughout the criminal proceedings.
The indemnitors on the bail bonds were never shown the bonds that would be posted by Stuyvesant in accordance with the indemnity agreement, and were never informed of the contents of the bonds themselves. In fact, when they paid the premiums to Stuyvesant, the indemnitors were routinely given receipts which stated that the collateral on the bonds would only be redeemable when the proceedings were concluded and only after certificates of disposition from the court were submitted to Stuyvesant. Although the indemnitors were told by Stuyvesant that the bonds were effective until the termination of the proceedings, Stuyvesant actually posted bonds which limited its liability to one year, whether the proceedings had concluded or not.
In cases where the proceedings had not concluded in one year, Stuyvesant retained the collateral even though its liability had terminated according to the terms of the bonds. Stuyvesant never notified the indemnitors that the bonds had expired and that the collateral could therefore be redeemed. When this court discovered that these bonds were worthless and that the principals had thus been at liberty without having satisfied the bail conditions, the principals and indemnitors were consequently left in an untenable position. For in many cases, the property used as collateral for the expired bonds constituted the indemnitors’ only means of securing bail bonds. When Stuyvesant would not release this property without the submission of certificates of disposition, the principals and indemnitors could not secure new bonds. In addition, when new bonds were secured, Stuyvesant required the payment of additional premiums.
The fact that these inequitable conditions might give rise to claims by the indemnitors against Stuyvesant for breach of the indemnity agreements or fraud does not affect the legal relationship between Stuyvesant and the State of New York in the case at bar. The argument by the People that this court must consider the permissible premiums allowed for professional bondsmen (Insurance Law, § 331-a, subd 4) overlooks the fact that the State was the only nampd obligee in the bond. To determine liability on the bail bond as if the indem *221 nitors were obligees would substantially alter the terms of the contractual obligation and would, in effect, create a different contract (see Matter of Patino v Patino, 8 AD2d 90). Thus, while Stuyvesant Insurance Company has acted irresponsibly and might face claims by private parties, this court is constrained to conclude that such considerations are irrelevant to the contract between Stuyvesant and the State of New York.
Therefore, the motion to vacate the judgment of forfeiture of bail must be granted.